In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2595

DOLI SYARIEF PULUNGAN,

*Plaintiff-Appellee,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-470-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED APRIL 2, 2013—DECIDED JULY 10, 2013

Before EASTERBROOK, *Chief Judge*, and BAUER and FLAUM, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Doli Syarief Pulungan spent 23 months in prison for attempting to export defense articles without a license. 22 U.S.C. §2778. Some of that time preceded his trial. He was released after we reversed his conviction, holding that the evidence did not show beyond a reasonable doubt that he knew that a license was required. 569 F.3d 326 (7th Cir. 2009).

Pulungan then asked the district court for a certificate of innocence, 28 U.S.C. §2513, which if issued can be used to seek compensation through the Court of Federal Claims. 28 U.S.C. §1495. The judge obliged, ruling that our decision shows that he is innocent.

Section 2513 provides:

(a) Any person suing under section 1495 of this title must allege and prove that:

(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

Our decision satisfies paragraph (a)(1). The district court believed that Pulungan meets the second clause of para-

graph (a)(2): "his acts, deeds, or omissions in connection with such charge constituted no offense".

Pulungan tried to acquire 100 Leupold Mark 4 CQ/T riflescopes, which he planned to export to Saudi Arabia and transship to Indonesia. He did not secure an export license. A license is required in order to export a "defense article." The Directorate of Defense Trade Controls has concluded that the Leupold Mark 4 CQ/T riflescope is a defense article under 22 C.F.R. §121.1 Category 1(f) because it is "manufactured to military specifications". When interrogated, Pulungan acknowledged that he was trying to acquire the 'scopes in small lots, so that his purchases would not be noticed, and planned to export them without seeking anyone's permission. He contended that he did this to avoid an embargo against arms exports to Indonesia. But the embargo had been lifted two years before; the prosecutor contended that Pulungan's real reason for his surreptitious conduct was to avoid the need for an export license under 22 U.S.C. §2778.

Our opinion held two things. (1) The district judge erred in instructing the jury that the 'scope is a defense article as a matter of law. Because the regulation does not specify the Mark 4's classification, that issue is a question of fact for the jury. (2) The evidence did not permit a reasonable jury to find, beyond a reasonable doubt, that (a) Pulungan knew that the Mark 4 CQ/T riflescope is a defense article or (b) licenses are required to export defense articles. An error in jury instructions (issue 1) normally leads to a second trial, but a failure of

proof (issue 2) leads to an acquittal. We reversed the conviction and remanded with instructions to enter a judgment of acquittal.

Pulungan committed all of the acts necessary for conviction (the first clause of paragraph (a)(2)), though the jury did not determine whether the Leupold Mark 4 CQ/T riflescope is a defense article. The record would have supported a finding that it is (there was testimony to that effect, which the jury could have accepted). The district judge did not hold a hearing on Pulungan's request for a certificate of innocence, so the defense-article issue has not been resolved in his favor at either the criminal trial or this civil proceeding. He cannot prevail under the first clause of paragraph (a)(2).

The district court relied on the second clause, ruling that his acts "constituted no offense". Yet if Pulungan acted with the necessary intent, and the Mark 4 is a defense article, he committed an offense. The district court treated our decision that he is entitled to an acquittal as equivalent to a decision that he did not commit a crime. Not at all. We held that it had not been *proved*, beyond a reasonable doubt, that Pulungan committed the crime. It remains entirely possible that the 'scopes are defense articles, that Pulungan knew it, and that he also knew of the need for a license. His contention that the secrecy was attributable to a belief in a nonexistent arms embargo to Indonesia may be a tall tale. A conclusion that the prosecutor did not prove a charge beyond a reasonable doubt differs from a conclusion that the defendant is innocent in fact.

Many people believe that persons who spend time in prison without a valid conviction should be compensated. That is not, however, what §1495 and §2513 do. They compensate only persons who are actually innocent—whether because they did not do what the indictment charged or because what they did is not a crime. *Rigsbee v. United States*, 204 F.2d 70 (D.C. Cir. 1953), holds that, for the purpose of §2513, acquittal differs from innocence, and every later court that has considered the subject has agreed. We are among them. See, e.g., *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993).

Surprisingly, the district court relied on *Betts* for the proposition that a defendant who has been acquitted has been determined to be innocent. That's not what *Betts* holds. The contested issue in *Betts* was whether the defendant had brought about his own prosecution, the third clause of paragraph (a)(2). In addressing that subject, the court remarked that Betts's acquittal showed that he was innocent, 10 F.3d at 1284, because of the specific reason for his acquittal. All of the facts were known; the only issue was legal. Betts had been convicted of contempt for disobeying a judicial order to appear in court. We held that the order had not been lawfully issued. Contempt therefore was legally impossible, no matter what Betts did or did not do. Pulungan's conviction was not legally impossible; he was charged with a real crime. His acquittal reflected failure of proof beyond a reasonable doubt, not (necessarily) innocence.

The United States contends that Pulungan faces problems under the third clause too. By his own account,

Pulungan set out to violate this nation's law, failing only because the embargo had been lifted (though he was ignorant of this). He asked his contacts to prepare false export papers; when questioned, he lied about his objectives, his itinerary, and even his birthdate. He was charged with one of the lies, concerning his travel; he persuaded the jury that the question was ambiguous (had the agent asked about travel on the passport he presented, or travel on another passport that he concealed?). Other lies easily could have been prosecuted under 18 U.S.C. §1001. The prosecutor's failure to add charges that seemed superfluous at the time would be a poor reason to award damages to a person whose (ultimately unsuccessful) deceits are established. Pulungan is not a person prosecuted only by mistake. *Betts* says that, to come within the third clause, a person "must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense." 10 F.3d at 1285. That seems an apt description of what Pulungan did. Maybe appearances are deceiving, but it would take an evidentiary hearing to support Pulungan's position.

On remand, one vital question will be whether the Leupold Mark 4 CQ/T riflescope is a defense article. If it is not, then Pulungan is actually innocent without regard to his state of mind. The agency's evidence about its classification of the 'scope will be admissible, and the judge as trier of fact will need to determine whether it meets the regulatory criteria. If it does, then as a practical matter Pulungan could show actual innocence only by testifying about his knowledge; the judge then

could determine whether he is telling the truth. He is now the plaintiff in civil litigation, so the burdens of production and persuasion are his. If he decides not to testify, that would be a good basis for an adverse inference. See *Baxter v. Palmigiano*, 425 U.S. 308, 316–20 (1976).

REVERSED AND REMANDED