WOOD, Circuit Judge,
concurring in the judgment.
I agree with my colleagues that Officers Kevin Eberle and Brian Forberg had probable cause to arrest each of the plaintiffs—Sara Bridewell, Randy Manuel, and Lisa Rhodes—for the murder of Walter Chandler. Even though the plaintiffs offer a plausible account of the events that unfolded on September 3, 2006, their account does not detract irom the objective reasonableness of the inferences that the officers drew from the information available to them when they arrived on the scene. The fact that the plaintiffs, especially Rhodes, were subjected to a grueling and humiliating 40-hour interrogation after their arrest is deeply disturbing. Probable cause, however, depends on what the police knew at the time of the arrest, not on anything that happened later. For the same reason, the post-arrest discovery that Chandler had been extremely drunk at the time he died neither adds nor detracts from the objective reasonableness of the actions of the police.
I also agree with the majority that Bridewell’s state-law claims for malicious prosecution and intentional infliction of emotional distress were properly dismissed. Nevertheless, I find both of these to be closer calls than one might think based on the majority’s opinion. The majority sees the disposition of the malicious-prosecution claim as straightforward: the prosecution dismissed the murder charges with a nolle prosequi motion, as part of a bargain in which Bridewell pleaded guilty to unrelated drug and gun possession charges. In Swick v. Liautaud, 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238 (1996), the Supreme Court of Illinois held without apparent qualification that “[t]he abandonment of the proceedings is not indicative of the innocence of the accused when the nolle prosequi is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.” Id., 215 Ill.Dec. 98, 662 N.E.2d at 1243. It is not clear, however, if the court meant to prevent the plaintiff from rebutting the inference that arises in those situations, or if it meant to create an absolute rule. Bridewell has offered evidence that she believes would rebut the inference that the dismissal of her murder charges did not signify innocence because it was part of her plea bargain. Her most important source is the note written by Assistant State’s Attorney Popielewski stating that “after consultation with the State’s Attorney ... it was determined that the State could not sustain its burden of proof in this case.” But as we recently noted in Pulungan v. United States, 722 F.3d 983 (7th Cir.2013), a decision that guilt has not been (or cannot be) proved beyond a reasonable doubt is not the same as a decision that the person did not commit a crime. Id. at 985. I would therefore find not that Bridewell was categorically barred from showing that her nolle prosequi reflected her innocence, but instead that she failed to overcome the contrary presumption that arises from the plea bargain.
Bridewell’s claim for intentional infliction of emotional distress also presents a much closer call for me than it does for the majority. The district court thought that this claim was time-barred, because it understood her to be contending that all of the offensive actions took place no later than the day when she was charged. That date was more than one year before she filed suit, and so if her claim was limited in *680 this way, it would indeed have been barred under 745 ILCS 10/8-101 (2003). The district court rejected the possibility that her ongoing imprisonment somehow made this a continuing wrong, relying on Evans v. City of Chi, 434 F.3d 916, 934 (7th Cir.2006).
I have no quarrel with the district court’s analysis, as far as it goes. But there is more to Bridewell’s allegations: she asserts' that the police committed several allegedly tortious actions after she was charged, and that these actions independently amounted to intentional infliction of emotional distress. Specifically, she states that the detectives failed to disclose to the prosecutors that Rhodes’s and Watkins’s statements implicating her were coerced and false. These were the statements elicited as a product of Rhodes’s 40-hour interrogation, during which the detectives threatened her by telling her that she would never see her children again, screamed at her, denied her bathroom breaks, subjected her to a biased polygraph examination, lied to her about the results, and were otherwise abusive. Only after that ordeal did Rhodes give a statement against Bridewell, her sister; she later repeated that statement to the grand jury. But these events were known to the prosecutors either before her indictment or shortly thereafter. Any claim based on them is thus also time-barred. Bridewell also argues that the DNA samples gleaned from the gun that was recovered were not sent for testing until 2009. Finally, she complains that Officer Forberg refused to discuss her case with the prosecutors because this civil case was pending. Even if the officers were responsible for the late DNA testing and were uncooperative with the prosecutors, however, those two actions are not enough to amount to the outrageous conduct that Illinois requires for this tort. See, e.g., Duffy v. Orlan Brook Condo. Owners’ Ass’n, 2012 IL App (1st) 113577, 367 Ill.Dec. 341, 981 N.E.2d 1069, 1079 (2012) (“extreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage”), citing Kolegas v. Heftel Broad. Corp., 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992). I thus concur in the decision to affirm the dismissal of this claim.
My final reservation relates to the majority’s discussion of Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Bridewell complains that the police waited too long to present her in court for a probable-cause hearing: Riverside holds that the hearing should have taken place within 48 hours, but Bridewell’s hearing did not occur until she had been detained for 63 hours. No harm, no foul, my colleagues argue: the purpose of the Riverside rule is to ensure that the innocent are not detained any longer than is absolutely necessary.
But Riverside is concerned not only with the obviously innocent, but also with those who might be entitled to bail. It is worth recalling, in this connection, that in the federal courts, the Bail Reform Act requires the pretrial release of a person, upon proper security, unless the judicial officer determines that the person will not show up as required or that he will endanger others in the community. See 18 U.S.C. § 3142(b); see also People ex rel. Hemingway v. Elrod, 60 Ill.2d 74, 322 N.E.2d 837, 840-41 (1975) (discussing the qualified constitutional right to bail under Illinois law and noting that “the object of bail ... is to make certain the defendant’s appearance in court and is not allowed or refused because of his presumed guilt or innocence”). And even a person who would not be entitled to release, as my colleagues assert Bridewell was, is entitled *681 to the orderly procedure provided by a hearing pursuant to Gerstein v. Pugh, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). One could have said much the same thing about the student in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), who was suspended without due process from his public school for possession of marijuana. Rather than holding that the existence of a factual justification for the suspension and the absence of any tangible injury defeated his claim altogether, the Supreme Court ruled that “if ... respondents’ suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners,” id. at 267, 98 S.Ct. 1042, because -“the right to procedural due process is ‘absolute’ in the sense that it does not depend upon the merits of a claimant’s substantive assertions,” id. In addition, Carey recognized that damages for emotional distress attributable to the deficiencies in procedure are possible, if the person can “convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.” Id. at 263, 98 S.Ct. 1042; see also Alston v. King, 231 F.3d 383, 386 (7th Cir.2000); Laje v. R.E. Thomason Gen’l Hosp., 665 F.2d 724, 728 (5th Cir.1982).
Bridewell has not explained, however, what emotional damages apart from the natural distress flowing from her detention she may have suffered as a result of the fifteen extra hours that elapsed before her Gerstein hearing. With respect to the detention itself, as a practical matter she is the beneficiary of the Dunn litigation, which dealt with the City’s careless application of Riverside. See Dunn v. City of Chi, 231 F.R.D. 367 (N.D.Ill.2005). The Dunn court cut off the class definition as of the date of its order, October 5, 2005 (eleven months before the events here), but as my colleagues point out, putting nominal damages to one side, Bridewell cannot recover anything for time spent in custody that was credited to a lawful sentence. I agree with them that Manuel and Rhodes failed properly to preserve their arguments by omitting them from their opening brief. Thus, in the end there is a chance that Bridewell might be entitled to a Carey-YIke. remand for nominal damages. But that is sufficiently in doubt that I will not dissent from the across-the-board affirmance that my colleagues favor.
With these reservations, I concur in the decision to affirm the judgment of the district court.