In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1283

MHAMMAD ABU-SHAWISH,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 03-CR-211-1-JPS — **J.P. Stadtmueller**, *Judge.*

ARGUED APRIL 5, 2018 — DECIDED JULY 31, 2018

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Petitioner-appellant Mhammad
Abu-Shawish was tried and convicted on a federal fraud
charge, but that conviction was reversed after he served the
entire prison sentence. Abu-Shawish was acquitted in a sec-
ond trial. He now seeks damages under 28 U.S.C. § 1495 and
§ 2513 for unjust conviction and imprisonment. Abu-Shawish
petitioned for a certificate of innocence—a prerequisite to a
damages claim against the United States under those statutes.

In this appeal, the government is in the unusual position of defending a dismissal it never requested. Without any response from the government, the district court dismissed the petition, reasoning that Abu-Shawish failed to provide evidence of his actual innocence. *United States v. Abu-Shawish*, 228 F. Supp. 3d 878, 883–84 (E.D. Wis. 2017).

We vacate the dismissal and remand for further proceedings. The district court applied a standard that is too rigorous for the pleading stage of what is, in essence, a new civil case embedded within a closed criminal case. In the end, the question in this proceeding is whether Abu-Shawish can show by a preponderance of the evidence that he was in fact not guilty of a crime, not whether the trial evidence would have allowed a conviction. This is not to say that Abu-Shawish is entitled to relief, but he must be given a fair opportunity to show that he is entitled to damages under the governing statutes.

I.  *Factual and Procedural Background*

A.  *Underlying Facts*

Abu-Shawish was the founder and executive director of a Milwaukee-based non-profit organization. *United States v. Abu-Shawish*, 507 F.3d 550, 552 (7th Cir. 2007). On behalf of that non-profit, Abu-Shawish sought and received a grant from the City of Milwaukee to create a plan for revitalizing a street in Milwaukee. The problem was that the development plan from Abu-Shawish's non-profit was "essentially identical" to a plan submitted by someone else and sponsored by a separate group. *Id.* at 553. The funds for the grant came from the United States Department of Housing and Urban Development, *id.* at 552, which explains why a local grant proposal ultimately piqued the interest of federal prosecutors.

B. *First Trial*

On the theory that Abu-Shawish took the government's money but gave it nothing it had not already paid for, the government charged him with federal program fraud under 18 U.S.C. § 666(a)(1)(A). A jury convicted Abu-Shawish in 2005. The district court sentenced Abu-Shawish to three years in prison and ordered him to pay $75,000 in restitution to the City of Milwaukee, $1,000 in fines, and a $100 assessment. Abu-Shawish served the full sentence.

We vacated Abu-Shawish's conviction. *Abu-Shawish*, 507 F.3d at 558. We held that the government charged Abu-Shawish with the wrong crime because the federal program fraud statute requires that the defendant be an agent of the defrauded organization. *Id.* at 556. Because Abu-Shawish was not an agent of the City of Milwaukee, and because the indictment did not indicate that Abu-Shawish defrauded his own non-profit, he could not be charged under the federal program fraud statute. See *id.* at 558. Our opinion went on to say that "the indictment properly alleged and the evidence was sufficient to show that Abu-Shawish defrauded the City of Milwaukee." *Id.* We noted that the government likely could have charged Abu-Shawish with mail or wire fraud. *Id.*

C. *Second Trial*

On remand, the district court dismissed the indictment for federal program fraud. A grand jury indicted Abu-Shawish again—this time as a principal under 18 U.S.C. § 2 on charges of mail fraud (18 U.S.C. § 1341) and transporting, in foreign commerce, funds obtained by fraud (18 U.S.C. § 2314). The case went to trial in 2008. This time the jury found Abu-Shawish not guilty.

D.  *Certificate of Innocence Filings*

In 2014, Abu-Shawish filed a complaint against the United States in the Court of Federal Claims pursuant to 28 U.S.C. § 1495 and **§** 2513 seeking damages for unjust conviction and imprisonment. *Abu-Shawish v. United States*, 120 Fed. Cl. 812, 812 (2015). Abu-Shawish filed that complaint after unsuccessfully suing the government and individual defendants for malicious prosecution and other torts. See *Abu-Shawish v. United States*, 546 F. App'x 576 (7th Cir. 2013). The Court of Federal Claims dismissed without prejudice for lack of jurisdiction because Abu-Shawish had not yet obtained a certificate of innocence, which § 2513 requires him to seek from the court where he was convicted. *Abu-Shawish*, 120 Fed. Cl. at 812, 814.

In November 2015, Abu-Shawish went back to the district court in Wisconsin and filed a *pro se* petition for a certificate of innocence.[1] The petition alleges that this court vacated the conviction on the federal program fraud charge, that the jury acquitted Abu-Shawish on the charges of mail fraud and transporting stolen funds in foreign commerce in the second trial, and that this acquittal proves Abu-Shawish "was and still is innocent of the charged offenses and of any fraud." After more than three months with no docket activity, Abu-Shawish filed a motion to expedite a decision on his petition. The government never responded to the original petition or

---

[1] The government does not argue that Abu-Shawish's petition is time-barred. Instead, the government's position, which it explained at oral argument, is that the statute of limitations for a damages claim against the government starts running when the petitioner obtains the certificate of innocence.

to the motion to expedite. The district court dismissed the petition in January 2017. Abu-Shawish appealed, and we recruited counsel, who have been of great assistance to the court and their client.

II. *Analysis*

It is difficult to prove actual innocence, and proceedings like this one are rare. See *Pulungan v. United States*, 722 F.3d 983 (7th Cir. 2013) (reversing grant of certificate; reversal of conviction was not sufficient to show actual innocence); *Engel v. Buchan*, 710 F.3d 698, 707 (7th Cir. 2013) (federal unjust conviction statutes do not apply to convictions under state law); *Betts v. United States*, 10 F.3d 1278 (7th Cir. 1993) (ordering grant of petition). Those cases and decisions by other courts explain that the federal statutes set a high bar for obtaining a certificate of innocence. Because of the scant precedent on this issue, we begin with a review of the statutes and their history.

A. *Current Statutes*

Read together, two statutes give people who have been unjustly convicted and imprisoned for a federal crime a damages remedy against the United States. The first gives the Court of Federal Claims jurisdiction over "any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495. The second establishes what a petitioner must prove and how and where a petitioner must prove it to establish the damages claim. 28 U.S.C. § 2513.[2] Section 2513(a) includes two

---

[2] Section 2513(a) provides, in full:

> (a) Any person suing under section 1495 of this title must allege and prove that:

paragraphs that impose distinct requirements for what a petitioner must allege and prove:

> First, the petitioner must establish that the record of the court setting aside or reversing his conviction demonstrates that the court did so on the ground that he is not guilty of the offense for which he was convicted. Second, the petitioner must prove that he did not commit any of the acts charged, or that those acts or related acts constituted no crime against the United States, or any State, Territory or the District of Columbia. Third, the petitioner must demonstrate that he did not by misconduct or neglect cause or bring about his own prosecution.

*United States v. Mills*, 773 F.3d 563, 566 (4th Cir. 2014), citing *United States v. Graham*, 608 F.3d 164 (4th Cir. 2010).

---

> (1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

> (2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

The petitioner proves those requirements to the Court of Claims by submitting a certificate of innocence from the court of conviction. See § 2513(b). To obtain that certificate in the court of conviction, the petitioner bears the "burdens of production and persuasion." *Pulungan*, 722 F.3d at 986; see also *Graham*, 608 F.3d at 172 (noting that § 2513 "imposes a rigorous burden"). Section 1495 waives the government's sovereign immunity, e.g., *Betts*, 10 F.3d at 1282, so courts construe § 2513 strictly, e.g., *Graham*, 608 F.3d at 172 (collecting cases). The few opinions on this subject highlight the result of that strict construction: out of twelve published appellate opinions with material treatment of § 2513, our opinion in *Betts* is the only one to reverse and remand with instructions to grant the petition.[3]

B. *Statutory History*

The story that led to these federal unjust conviction statutes supports this stringent standard. The story begins with front-page news in 1911: a wrongful conviction following a labor riot in one of Andrew Carnegie's steel mills. The cast of characters includes not just Andrew Carnegie but also

---

[3] See *Hernandez v. United* States, 888 F.3d 219 (5th Cir. 2018); *United States v. Mills*, 773 F.3d 563 (4th Cir. 2014); *United States v. Grubbs*, 773 F.3d 726 (6th Cir. 2014); *Pulungan v. United States*, 722 F.3d 983 (7th Cir. 2013); *United States v. Graham*, 608 F.3d 164 (4th Cir. 2010); *Diamen v. United States*, 604 F.3d 653 (D.C. Cir. 2010); *United States v. Racing Services, Inc.*, 580 F.3d 710 (8th Cir. 2009); *Betts v. United States*, 10 F.3d 1278 (7th Cir. 1993); *Osborn v. United States*, 322 F.2d 835 (5th Cir. 1963); *Rigsbee v. United States*, 204 F.2d 70 (D.C. Cir. 1953); *United States v. Brunner*, 200 F.2d 276 (6th Cir. 1952); see also *Crooker v. United States*, 828 F.3d 1357 (Fed. Cir. 2016) (reading § 2513 together with sentencing credit statute, 18 U.S.C. § 3585, and reversing damages award because time petitioner served for reversed conviction was credited to sentence on other, remaining conviction).

Charles Schwab, Dean Wigmore, and then-Professor Felix Frankfurter. Our discussion draws from the comprehensive treatment of the legislative history in *United States v. Keegan*, 71 F. Supp. 623 (S.D.N.Y. 1947).

Andrew Carnegie made the front page of the *New York Times* for doing what the Pennsylvania legislature refused to do. *Carnegie Pensions Toth. Man Who Served Twenty Years for Crime He Did Not Commit*, N.Y. Times, Aug. 2, 1911, at 1. The legislature refused to compensate Andy Toth, a former steel-worker in one of Carnegie's mills who was released from prison after serving twenty years of a life sentence for a murder he did not commit. Editorial, *False Imprisonment*, 17 Va. L. Reg. 406 (1911); Edwin M. Borchard, *Convicting the Innocent* 286 (1932). Carnegie arranged to pay Toth $40 a month for the rest of his life. Borchard, *supra*, at 291.

Toth was one of three defendants convicted of murder for the beating of a furnace boss during a labor riot in one of Carnegie's mills. *Id.* at 287–89. Convicted amidst a wave of anti-Hungarian prejudice following the riot, Toth was sentenced to be hanged. *Id.* at 289, 292. The governor commuted Toth's death sentence to life imprisonment after Carnegie, Charles Schwab, and others lobbied on his behalf. *Id.* at 289. In 1911, when another man confessed to the murder on his deathbed, the brother of Toth's lawyer pushed for a pardon. *Id.* at 290. Eventually, members of Congress introduced separate bills in the House and Senate in 1912 to compensate wrongly convicted prisoners like Toth, but it took more than 25 years for Congress to enact legislation.[4]

---

[4] The current actual-innocence statutes stem from a 1937 bill that became the first federal law to "indemnify the victims who suffer by reason

The pair of statutes now codified as 28 U.S.C. § 1495 and § 2513 began as four separate statutes. See Pub. L. No. 75-539, 52 Stat. 438 (3d sess. 1938) (codified at 18 U.S.C. §§ 729–32 (1940)). Congress consolidated and revised those statutes into their modern format and moved them into Title 28 in 1948. See *Revision of Title 28, United States Code*, H.R. Rep. No. 80-308, at A195 (1947) ("Sections 729–732 of title 18, U. S. C., 1940 ed., were consolidated and completely rewritten in order to clarify ambiguities which made the statute unworkable as enacted originally. Jurisdictional provisions of section 729 of title 18, U. S. C., 1940 ed., are incorporated in section 1495 of

---

of mistakes in the criminal law." *Relief for Persons Erroneously Convicted*, S. Rep. No. 75-202, at 1 (1937). The final sentence of the House Judiciary Committee's report provides a succinct purpose: "If we indemnify the taking of property, we should indemnify injustice to human beings." *Relief for Erroneously Convicted Persons*, H.R. Rep. No. 75-2299, at 4 (3d Sess. 1938).

The road to enactment was long. Legislators introduced separate bills in the House and Senate in 1912, but neither bill made it out of committee. S. 7675, 62d Cong. (3d Sess. 1912); H.R. 26748, 62d Cong. (3d Sess. 1912). Legislators tried again in 1935 by introducing a new Senate bill, S. 2155, 74th Cong. (1935), that was reported out of committee, *Relief for Erroneously Convicted Persons*, S. Rep. No. 74-2339 (1936), but does not appear to have been calendared for a vote.

Edwin Borchard, then the Law Librarian of Congress, drafted the original 1912 Senate Bill and wrote an accompanying document (with an editorial by John Wigmore, then the dean of Northwestern's Law School) urging Congress to act. Edwin M. Borchard, *State Indemnity for Errors of Criminal Justice*, S. Doc. No. 62-974 (3d Sess. 1912). Borchard's document, apparently drawing from European indemnity statutes, referred to the Toth case as "still fresh in the public mind." *Id.* at 5. Eventually, Borchard became a law professor and wrote a book digesting 65 innocence cases, including Toth's. Edwin M. Borchard, *Convicting the Innocent: Errors of Criminal Justice*, at vii, 286–93 (1932).

this title. Changes were made in phraseology."); see also *Weiss v. United States*, 95 F. Supp. 176, 178 (S.D.N.Y. 1951) ("It would therefore seem that the revision was for the purpose of clarity, and that no substantial change in the substantive law was intended."). The only material change since then was a substantial increase of the damages cap in § 2513(e). Justice for All Act of 2004, Pub. L. No. 108-405, § 431, 118 Stat. 2260, 2293 (replacing $5,000 cap with caps of $100,000 per year of incarceration for plaintiffs sentenced to death and $50,000 per year of incarceration for all other plaintiffs).

Like the district court here and every other circuit to consider the question, we read the statute's distinction between acquittal and innocence as setting a high bar for petitioners. *Pulungan*, 722 F.3d at 985. The distinction between acquittal and innocence appeared early in the legislative history. The Attorney General made this distinction in his comment on the 1935 bill, and that comment was reprinted in the report on the 1937 bill:

> Ideal justice would seem to require that in the rare and unusual instances in which a person who has served the whole or part of a term of imprisonment, is later found to be entirely innocent of the crime of which he was convicted, should receive some redress. On the other hand, reversals in criminal cases are more frequently had on the ground of insufficiency of proof or on the question as to whether the facts charged and proven constituted an offense under some statute. Consequently, it would be necessary to

>     separate from the group of persons whose con-
>     victions have been reversed, those few who are
>     in fact innocent of any offense whatever.

*Relief for Persons Erroneously Convicted*, S. Rep. No. 75-202, at 3 (1937); *Relief for Erroneously Convicted Persons*, S. Rep. No. 74-2339, at 3 (1936); see also *Graham*, 608 F.3d at 171 n.2 (quoting Attorney General's comment and concluding that legislative history "clearly demonstrates a congressional desire to limit the class of persons entitled to relief under the statute"). The House Judiciary Committee noted the same distinction in its report accompanying the bill out of committee. See H.R. Rep. No. 75-2299, at 2 ("In other words, the claimant must be inno-cent of the particular charge and of any other crime or offense that any of his acts might constitute. The claimant cannot be one whose innocence is based on technical or procedural grounds, such as lack of sufficient evidence, or a faulty indict-ment—such cases as where the indictment may fail on the original count, but claimant may yet be guilty of another or minor offense."); see also *Keegan*, 71 F. Supp. at 635 (reprinting House Report and concluding that "Congress never intended that every imprisoned person whose conviction had been set aside, should be indemnified by the Government").

The House amendments also introduced the concept of the certificate of innocence and divided the judicial labor. In-stead of litigating innocence in the Court of Claims (as in the Senate version of the bill), the petitioner would first establish innocence in the district court of conviction, obtain a certifi-cate, and then present that certificate to the Court of Claims, which would decide only the question of damages. See H.R. Rep. No. 75-2299, at 1, 2.

C. *Litigating and Adjudicating Actual Innocence Claims*

This history informs our understanding of the procedural and substantive requirements for litigating actual innocence petitions. Procedurally, petitions for certificates of innocence are "civil in nature," regardless of the docket designation. *Betts*, 10 F.3d at 1283, citing *United States v. Brunner*, 200 F.2d 276, 279 (6th Cir. 1952), and *McMurry v. United States*, 15 M.J. 1054, 1055 (N.M.C.M.R. 1983). Although district court clerks may file petitions under the existing criminal docket number (as in *Betts*) or as a separate, miscellaneous civil case (as in *Pulungan*), we think the better course is to file the petition under the existing criminal docket number with the conviction because a petition starts what is, in essence, a civil proceeding within the closed criminal case. In that respect, a petition is similar to a motion under Federal Rule of Criminal Procedure 41(g) for the return of seized property, which we have called an "ancillary proceeding." See *United States v. Norwood*, 602 F.3d 830, 832 (7th Cir. 2010) ("The Rule 41(g) proceeding may be maintained as an ancillary proceeding in the district court even after the criminal proceeding ends."), citing *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), and *United States v. White*, 582 F.3d 787, 806 n.3 (7th Cir. 2009). As with a Rule 41(g) motion, a petitioner for a certificate of innocence must pay a filing fee. Cf., e.g., *United States v. Shaaban*, 602 F.3d 877, 879 (7th Cir. 2010) (per curiam) (noting that prisoner "could be ordered to pay the civil fees and would be subject to the Prison Litigation Reform Act [for Rule 41(g) motion] without making him jump through the hoop of filing another case"), citing *United States v. Howell*, 354 F.3d 693, 695 (7th Cir. 2004) (noting that Rule 41(g) motions are subject to "the usual procedural requirements for maintaining a federal civil suit, such as the payment of a filing fee"). If the court grants the petition,

it should enter the certificate of innocence on the docket of the criminal case.

We have said that whether "a petitioner is entitled to a certificate of innocence … is a question committed to the sound discretion of the district court" and that appellate review is for an abuse of that discretion. *Betts*, 10 F.3d at 1283, citing *Rigsbee v. United States*, 204 F.2d 70, 72 & n.2 (D.C. Cir. 1953), *Burgess v. United States*, 20 Cl. Ct. 701, 704 (1990), and *Keegan*, 71 F. Supp. at 635. That phrasing needs more explanation. Discretion does not mean that a district judge can exercise "discretion" to deny a certificate even if a petitioner meets the statutory burden of proof. That would be a legal error—an abuse of discretion by definition. See *Betts*, 10 F.3d at 1283, 1286 (noting abuse-of-discretion and clear-error standards and reversing clearly erroneous finding that petitioner "brought about his own prosecution through neglect or misconduct"); see also *In re Veluchamy*, 879 F.3d 808, 823 (7th Cir. 2018) (district court "abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact"), quoting *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 892 (7th Cir. 2012). In this line of cases, the references to "discretion" have meant that the district judge may not rely solely on the judgment of acquittal but must exercise judgment in the process of hearing evidence and making a finding on whether or not a defendant has satisfied the burden of proof to obtain the certificate. See *Keegan*, 71 F. Supp. at 636 ("Unless the law contemplated the exercise of discretion on the part of the court, there would be no point in requiring the certificate of the court. If no discretion were contemplated, and only a ministerial act was required, the clerk could certify the final finding of not guilty, just as well as the court.").

The petitioner must receive a fair opportunity to be heard on the petition. Again, we find a helpful analogue with Rule 41(g), where the district judge has procedural discretion. See *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) (requirement that district court "'*must* receive *evidence* on any factual issue necessary to decide the motion' … does not mean that a district court must conduct an evidentiary hearing to resolve all factual disputes") (citation omitted and ellipsis added), quoting Fed. R. Crim. P. 41(g). The certificate-of-innocence statutes do not establish specific procedures for deciding a petition, so the details of briefing and any motions practice or evidentiary hearing are sensibly left, of course, to the district judge's discretion. Cf. *Rhein v. Coffman*, 825 F.3d 823, 827 (7th Cir. 2016) (analogizing to Rule 41(g) and noting that "courts have not established time limits for holding hearings and making decisions on motions to return firearms").

For procedural issues, our review is for abuse of discretion. See *Stevens v. United States*, 530 F.3d 502, 506 (7th Cir. 2008). It is also clear from the statutes that both the petitioner and the government must have an opportunity to introduce new evidence. Cf. *Stevens*, 500 F.3d at 628 (Rule 41(g) requires "that the district court receive evidence to resolve factual disputes"), citing *United States v. Albinson*, 356 F.3d 278, 281–82 (3d Cir. 2004). Ultimately, the district judge must take a fresh look at all the relevant evidence and make a "determination independent of the outcome of the trial or appeal," *Betts*, 10 F.3d at 1283; see also *Stevens*, 500 F.3d at 628 (under Rule 41(g), "any factual determinations supporting the court's decision must be based on evidence received"). The district judge is free to draw on his or her memory of the trial, but those mem-

ories need to be explained in findings. And meaningful appellate review requires a transcript of any trials, hearings, or other proceedings on which those memories are based.

D. *Abu-Shawish's Case*

The district court has considerable discretion in managing a case like this toward a fair disposition, but Abu-Shawish received no meaningful opportunity to be heard. His petition was dismissed without any response from the government, without any briefing or hearing, and by imposing a pleading standard not compatible with civil proceedings and without an opportunity to try to cure the pleading defects identified by the district court.

The bar for obtaining a certificate of innocence is high, but the district court applied too stringent a standard to Abu-Shawish's *pro se* pleading. As the government acknowledges, Federal Rule of Civil Procedure 8 provides the applicable standard for this civil proceeding. It requires only "a short and plain statement" of a claim. Fed. R. Civ. P. 8(a)(2). And because Abu-Shawish was proceeding *pro se*, the district court should have construed his petition liberally. See, e.g., *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018) (reversing dismissal of *pro se* prisoner's claims because "pro se filings should be read liberally"), citing *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008); *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018) ("The Supreme Court has cautioned that any 'document filed *pro se* is to be liberally construed.'"), quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The district court set the bar too high by applying what seems to have been a heightened evidentiary standard at the

pleading stage. It faulted Abu-Shawish for not providing "evidence of his actual innocence," *Abu-Shawish*, 228 F. Supp. 3d at 883, citing *Pulungan*, 722 F.3d at 986, and for "conclusory allegations, unsupported by citations to the record or independent evidentiary submissions," *id.* at 883 n.2. But under Rule 8 "evidence is not required at the pleading stage," *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (reversing dismissal because district court "applied too demanding a standard" by requiring evidence at pleading stage), and neither the district court nor the government identified a source for imposing a different standard on a petition for a certificate of innocence under § 2513.

We do not see a defect in Abu-Shawish's petition. He alleged what was required by § 2513(a), and even a little more: that his conviction had been reversed on the ground that he was not guilty of the offense of conviction, that he was innocent of any charged offenses and fraud, that he was acquitted in the second trial, and that he did not, by his own conduct, voluntarily cause or bring about his conviction. He did not spell out the evidence supporting his petition, but that level of detail ordinarily comes later in a civil proceeding.

To the extent the district court found, correctly or not, that Abu-Shawish's petition fell short of what was required, the court should have given him leave to replead. The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile. See, e.g., *Childress v. Walker*, 787 F.3d 433, 441 (7th Cir. 2015) (reversing denial of leave to amend and noting that district courts should grant leave freely under Rule 15(a)(2) and that "denials are disfavored" but permitted in certain circumstances), quoting *Bausch v. Stryker Corp.*, 630

F.3d 546, 562 (7th Cir. 2010); *Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (collecting cases).

That is the ordinary practice in an ordinary civil case where the party is represented by counsel. When the party is *pro se*, the liberal approach to amending pleadings applies with even more force. E.g., *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (summarily vacating dismissal), citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (reversing dismissal); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013) (applying Rule 15(a), reversing dismissal, and collecting cases for proposition that "plaintiffs enjoy leave to amend whenever 'justice so requires' and, as a matter of course, almost always get an opportunity to amend their complaints at least once"). And as we explained in *Runnion*, "The liberal standard for amending under Rule 15(a)(2) is especially important where the law is uncertain." 786 F.3d at 520. Cases like this one are so rare that the pleading standards for a petition for a certificate of innocence surely qualify as debatable. While truly futile amendments need not be allowed, a district judge who believes a pleading has a fatal but possibly curable flaw needs to identify it and give the pleading party a fair opportunity to try to correct it. *Id*., citing *Barry Aviation*, 377 F.3d at 687.

On remand, the district court must allow Abu-Shawish to proceed on his petition. We see no need for devoting further time to pleading matters. Instead, the court must give the United States an opportunity to respond to the petition and then prepare the case for decision. The court will need to make the independent determination of guilt or innocence

that we required in *Betts*. To make that independent determination, the district court must give both sides the opportunity to submit evidence. See, e.g., *Rigsbee*, 204 F.2d at 71 (district court's order noted that court held oral argument on petition); *Weiss*, 95 F. Supp. at 179 (deciding petition based on oral argument, briefing, and affidavits from both parties); *Keegan*, 71 F. Supp. at 637–38 (noting that district court may rely primarily on trial record but that other relevant facts may be submitted by affidavit and oral testimony). If Abu-Shawish declines to submit additional evidence—by affidavit or otherwise—the district court could properly resolve the petition based on the trial records alone. See *United States v. Grubbs*, 773 F.3d 726, 733 (6th Cir. 2014) (resolving petition on trial evidence alone because petitioner "elected not to add anything to the record**"**); *Brunner*, 200 F.2d at 279 (resolving petition based on trial record and affidavit from government submitted in proceedings on certificate of innocence because petitioner "produced no other evidence in support of his application").

On the merits, Abu-Shawish has the burden to prove by a preponderance of the evidence that he is actually innocent. As the district judge and both sides understand, that is more difficult than proving that Abu-Shawish was found not guilty or that his conviction was reversed. See *Grubbs*, 773 F.3d at 733 (preponderance standard applies to certificate of innocence proceedings). Abu-Shawish satisfies the first requirement of § 2513(a) because his conviction was reversed on the merits, see *Pulungan*, 722 F.3d at 984 (§ 2513(a)(1) satisfied by reversal of conviction because of insufficient evidence), and the government is not arguing that he fails the third requirement, not having caused his conviction. Abu-Shawish's claim will succeed or fail based on the second requirement—whether his actions constituted any crime under federal or state law.

The district court wrote that our opinion reversing Abu-Shawish's conviction "forecloses" Abu-Shawish's argument that his conduct was not criminal. *Abu-Shawish*, 228 F. Supp. 3d at 882. That is not correct. Whether the evidence was sufficient to support a finding of guilt is not the test for a certificate of innocence. The court must decide whether the petitioner has shown that he did not—in fact—commit a crime. Statements about the sufficiency of evidence do not offer a shortcut around that question. See *Weiss*, 95 F. Supp. at 179–80 (declining to defer to dictum in Supreme Court opinion that petitioner was not guilty of offense other than offense of conviction); *Keegan*, 71 F. Supp. at 639 (same); see also *United States v. Racing Services, Inc.*, 580 F.3d 710, 713–14 (8th Cir. 2009) (affirming district court's denial of certificate even though appellate opinion reversing conviction doubted, in dictum, that conduct violated state law).

On remand, after giving Abu-Shawish an opportunity to be heard and fully considering his petition, the district court will need to decide whether Abu-Shawish had the requisite intent—either for federal mail or wire fraud or for a similar state crime. The district court also wrote that it was "quite likely that Abu-Shawish could be found to have committed fraud by the preponderance standard applicable to the instant petition." *Abu-Shawish*, 228 F. Supp. 3d at 883. That finding is not sufficient, even after a fair opportunity to be heard. The statute does not speak in terms of probabilities about jury trials or the sufficiency of evidence to convict.

The district court also wrote that "it cannot be said that Abu-Shawish's 'conduct … did not constitute a crime.'" *Id.*, quoting *Betts*, 10 F.3d at 1284. That statement addresses the ultimate issue in this case, but it came before Abu-Shawish

had a fair opportunity to be heard on his petition. The district court based that statement on our reversal of Abu-Shawish's conviction, the evidence presented at the first trial, and Abu-Shawish's second trial, without giving Abu-Shawish an opportunity to present additional evidence. See 228 F. Supp. 3d at 882–83. Also, the district court's review of the second trial was necessarily limited because the transcript did not exist at the time of the court's order. We understand the district court's skepticism, but Abu-Shawish is entitled to a fair opportunity to be heard. When the court decides the case on the merits, it will need to explain its ultimate decision with reviewable findings of fact under Rule 52 and will need to make the independent determination *Betts* requires.

The dismissal of Abu-Shawish's petition is VACATED, and the case is REMANDED for proceedings consistent with this opinion.