**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 21-7209**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

RICHARD CRAIG MOON,

        Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Timothy M. Cain, District Judge.  (6:06-cr-00638-TMC-1)

Argued:  March 8, 2022                           Decided:  April 11, 2022

Before WILKINSON, NIEMEYER, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

**ARGUED**:  Christopher Wayne Adams, ADAMS & BISCHOFF. P.C., Charleston, South Carolina, for Appellant.  William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.  **ON BRIEF:**  Meredith D. McPhail, ADAMS & BISCHOFF. P.C., Charleston, South Carolina, for Appellant.  M. Rhett DeHart, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

WILKINSON, Circuit Judge:

Richard Moon pleaded guilty to being a felon in possession of a firearm, and the district court applied a sentencing enhancement under the Armed Career Criminal Act, resulting in a 15-year sentence. After intervening caselaw rendered Moon ineligible for the enhancement, he was resentenced to time served. Moon subsequently petitioned the district court under 28 U.S.C. § 2513 for a certificate of innocence, which would permit him to sue the United States for damages resulting from his allegedly wrongful conviction. The district court found that Moon had failed to meet each of the three statutory requirements for a certificate of innocence. For the following reasons, we affirm.

I.

On January 14, 2005, Richard Moon was pulled over by a Fountain Inn, South Carolina police officer for ignoring a stop sign. After issuing Moon a written warning for the traffic violation, the officer asked to search Moon's car. Moon refused, falsely claiming that he had locked his keys in the car. After Moon's wife produced a set of keys, Moon consented to a search. Officers seized methamphetamine, marijuana, electronic scales, and a loaded 12-gauge shotgun, and Moon was arrested. At the time of his arrest, Moon had several prior state convictions, including marijuana possession with intent to distribute and second-degree burglary, both of which were punishable by more than a year in prison.

Moon was indicted in the District of South Carolina and charged with being a felon in possession of a firearm and with possessing methamphetamine and marijuana with intent to distribute. Moon pleaded guilty to the firearm charge, after which the government dismissed the drug charge. At sentencing, the district court concluded that Moon had three

2

prior convictions for "violent felonies"—which Moon's counsel did not contest—and therefore imposed the 15-year mandatory minimum sentence required by 18 U.S.C. § 924(e)'s Armed Career Criminal Act (ACCA) enhancement. Moon unsuccessfully challenged his enhanced sentence on direct appeal and in a habeas petition.

After Moon's conviction became final, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015), and *Welch v. United States*, 578 U.S. 120 (2016). The Court held that one of § 924(e)'s definitions of "violent felony"—the residual clause—was unconstitutionally vague and that this ruling would be retroactive on collateral review. Because Moon's enhanced sentence was based on the invalidated residual clause, the district court vacated Moon's § 924(e) enhancement and immediately resentenced him to time served plus ten days on the underlying felon-in-possession conviction. Moon ultimately served nine years—less than the ten-year statutory maximum for being a felon-in-possession, but more than the Sentencing Guidelines would have provided absent the § 924(e) enhancement. 18 U.S.C. § 924(a)(2).

Five years after his release, Moon petitioned the district court for a certificate of innocence under 28 U.S.C. § 2513(a), which would permit him to seek compensation for his allegedly unjust imprisonment. *See United States v. Graham*, 608 F.3d 164, 169 (4th Cir. 2010) (citing 28 U.S.C. § 1495). The district court found that Moon had failed to prove each of the requirements for a certificate under 28 U.S.C. § 2513(a). As a result, the district court denied Moon's motion for a certificate of innocence. Moon has timely appealed that denial, contending that he is indeed entitled to the certificate.

## II.

Section 2513 lays out the process through which a petitioner can secure a certificate of innocence, thereby permitting a suit for damages against the United States in the Court of Federal Claims. 28 U.S.C. §§ 1495, 2513. The statute requires a petitioner who has not been pardoned to make three independent showings. *Id.* § 2513. First, the petitioner must demonstrate that "[h]is conviction has been reversed or set aside on the ground that he is not guilty . . . or on new trial or rehearing he was found not guilty of such offense." *Id.* § 2513(a)(1). Second, the petitioner must either show (1) "[h]e did not commit any of the acts charged" or (2) "his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia." *Id.* § 2513(a)(2). And third, he must prove "he did not by misconduct or neglect cause or bring about his own prosecution." *Id.* In simple terms, a petitioner must show his conviction was reversed on the grounds of innocence, that he was in fact innocent, and that his malfeasance didn't cause his prosecution.

We review denials of a certificate for abuse of discretion. *United States v. Mills*, 773 F.3d 563, 566 (4th Cir. 2014). Under this standard, we must affirm the denial unless the district court's factual findings were clearly erroneous or the "refusal to certify innocence was completely capricious and without rational basis." *Graham*, 608 F.3d at 172. Once a district court concludes that a petitioner has met the three statutory requirements, however, the court does not possess further discretion to deny the certificate. *Abu-Shawish v. United States*, 898 F.3d 726, 736 (7th Cir. 2018).

4

Congress intended that certificates of innocence would not be easy to obtain. Section 2513 was enacted to compensate "only the truly innocent," and was not intended to open "wide the door through which the treasury may be assailed by persons erroneously convicted." *Graham*, 608 F.3d at 171. And because the grant of a certificate of innocence and the ensuing monetary claim against the United States involve a waiver of sovereign immunity, the requirements to secure a certificate of innocence are strictly construed. *Graham*, 608 F.3d at 172; *Mills*, 773 F.3d at 571. Moon has not met any of these three requirements.

A.

The first prong of § 2513 requires a petitioner seeking a certificate of innocence to prove "[h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted." 28 U.S.C. § 2513(a)(1). Courts must therefore determine whether a petitioner's conviction was reversed based on innocence, as opposed to "technical or procedural grounds." *See Graham*, 608 F.3d at 169. But unlike the typical certificate of innocence petitioner, Moon concedes that he cannot make even the minimal showing that his underlying conviction has been overturned. It therefore bears stressing that if Moon believes his felon-in-possession conviction is invalid, this is emphatically not the forum or court to litigate that issue. In *Diamen v. United States*, 604 F.3d 653 (D.C. Cir. 2010), the D.C. Circuit explained that the text of § 2513 does not hint at providing jurisdiction to review still-extant convictions. 604 F.3d at 657. Section 2513 requires that a conviction have been nullified through a reversal, vacatur, or pardon before a certificate

can be sought. 28 U.S.C. § 2513(a)(1). Moon must obtain any such reversal through the customary path of direct appeal and collateral review, and he has not done so here.

Moon nevertheless argues that his failure to secure reversal of his felon-in-possession conviction is not fatal to his bid for a certificate of innocence. He claims that the reversal of his § 924(e) sentencing enhancement meets the statutory requirement that his conviction be reversed. However, the reversal or vacatur of a sentencing enhancement cannot meet the first prong of § 2513 because it is neither an independent "conviction" nor an "offense," as required by the statute. *Id.*

Unless the Sixth Amendment requires that a fact be found by a criminal jury, the choice of whether a statutory provision constitutes a standalone criminal offense or whether it is merely a sentencing enhancement belongs to Congress. *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). To determine which choice Congress made, we "look to the statute's language, structure, subject matter, context, and history." *Id.* Factors that indicate a provision constitutes an enhancement rather than an offense include (1) a focus on recidivism; (2) references to an underlying offense; and (3) a statutory title or section heading using the word "penalties." *Id.* at 230–34.

The text of § 924(e) clearly demonstrates that it is an enhancement. First, the provision only applies to defendants with "three previous convictions" for "a violent felony or a serious drug offense," and is therefore sharply focused on recidivism. 18 U.S.C. § 924(e)(1). Second, the statute references and is inextricably linked to the underlying § 922(g) violation. The language "[i]n the case of a person who violates section 922(g)," renders § 924(e) meaningless without an underlying conviction, strongly suggesting it is

6

an enhancement. *Id.* Finally, Congress explicitly entitled § 924 "[p]enalties." *Id.* § 924. While § 924 does contain some standalone offenses, *see, e.g.*, *id.* § 924(c), the text as a whole makes clear that § 924(e) is an enhancement rather than an offense.

Any attempt to transform § 924(e) from an enhancement into a standalone offense would breed only confusion. What are the elements of this offense? What is its *mens rea*? Moon has no answer because no elements or *mens rea* for the so-called "offense" are provided. These are hardly idle questions, as the government would be required to set forth each element of the offense in the indictment. *Almendarez-Torres*, 523 U.S. at 228. In contrast, the indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Id.* Moon's erroneous claim that § 924(e) constitutes an independent offense thus risks no small change in the law. Treating § 924(e) as an offense, rather than an enhancement, would suggest that it must be detailed in the indictment and submitted to the jury. *Id.* at 228, 235. Moon's indictment did no such thing, and a requirement that the § 924(e) enhancement be proved to a jury has been uniformly rejected because its applicability depends on the "determination of a sentencing factor, not a determination of an element of an offense." *United States v. Carrigan*, 724 F.3d 39, 51 n.4 (1st Cir. 2013); *United States v. Thompson*, 421 F.3d 278, 281, 284–87 (4th Cir. 2005); *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004) ("[T]his issue need not be pled in an indictment, submitted to a jury, and proved beyond a reasonable doubt."); *see also Key v. United States*, 2017 WL 4412891, at *2, 7 (S.D. W. Va. Aug. 15, 2017), *aff'd* 712 F. App'x 274 (4th Cir. 2018) (affirming the district court's denial of a certificate of innocence on the grounds that the vacatur of a § 924(e) enhancement does not satisfy the

7

requirement that a petitioner's conviction be overturned). In fact, Moon moved for "resentencing" after *Johnson* and *Welch*, tacitly acknowledging that § 924(e) was a sentencing enhancement built upon the underlying § 922(g) offense.

Finally, Supreme Court precedent demonstrates that § 924(e) is an enhancement rather than an offense. While offenses must be found by a jury, *Almendarez-Torres*, 523 U.S. at 235, the Court in *Shepard v. United States*, 544 U.S. 13 (2005), permitted judges, rather than a jury, to determine whether the "ACCA sentencing enhancement" applied. *Id.* at 22, 24–26. And the Court has repeatedly and consistently referred to § 924(e) as an "enhancement," rather than a conviction or offense. *See, e.g.*, *Wooden v. United States*, 142 S. Ct. 1063, 1068 (2022); *Shular v. United States*, 140 S. Ct. 779, 782 (2020); *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016).

B.

The second prong of § 2513 requires that the petitioner establish that either (1) "[h]e did not commit any of the acts charged" or (2) his acts or omissions "constituted no offense against the United States, or any State, Territory or the District of Columbia." 28 U.S.C. § 2513(a)(2). Moon cannot make this first showing because he concedes that he possessed a firearm, thus committing one of the acts charged. *See Mills*, 773 F.3d at 569 ("The only plausible reading of § 2513 is that possessing a firearm is an 'act charged.'"). And as to the second showing, Moon's argument that he is actually innocent of any "offense against the United States" fails because his possession of the gun was, in fact, illegal.

Section 922(g)(1), the offense of which Moon was convicted, prohibits those who have been (1) "convicted" of (2) "a crime punishable by imprisonment for a term exceeding

8

one year" from possessing a firearm. 18 U.S.C. § 922(g)(1). Whether a crime is "punishable by imprisonment for a term exceeding one year" depends on the "maximum sentence that [a defendant] could have received," not "the sentence [a defendant] actually received." *United States v. Kerr*, 737 F.3d 33, 39 & n.8 (4th Cir 2013). Because Moon was convicted of a South Carolina offense punishable by more than a year, he was barred from possessing a gun.

Moon disagrees, claiming that his possession of the shotgun was not illegal because he had not been convicted of a requisite felony. He acknowledges that some of his South Carolina offenses were "punishable by imprisonment for a term exceeding one year." However, Moon argues that he was never "convicted" of these offenses at all. Under his view, only South Carolina "youthful offenders" who actually served a term of incarceration exceeding a year suffered "convictions." But our precedent and South Carolina law make clear that any offender who, like Moon, was adjudicated guilty in South Carolina general sessions court—as opposed to family court—suffered an adult conviction. *United States v. Sitton*, 21 F.4th 873, 874 (4th Cir. 2022).

To understand why Moon's argument falls flat, a brief background on South Carolina's Youthful Offender Act (YOA) is necessary. The YOA establishes a discretionary sentencing alternative for offenders under the age of 25 who are convicted of certain eligible crimes in South Carolina. *See* S.C. Code Ann. §§ 24-19-10, 24-19-50. "[T]he language of the YOA is permissive, not mandatory." *United States v. Williams*, 508 F.3d 724, 727 (4th Cir. 2007). So when a youthful offender is convicted, the court may, *inter alia*, "(1) place the youthful offender on probation; (2) sentence the youthful offender

to an indeterminate sentence not to exceed six years; or, if the court finds that the offender will not benefit from treatment, (3) sentence the youthful offender 'under any other applicable penalty provision.'" *Sitton*, 21 F.4th at 875 (quoting S.C. Code Ann. § 24-19-50). When sentencing youthful offenders, courts thus retain discretion to impose a sentence up to the statutory maximum. *Williams*, 508 F.3d at 727.

Moon was twice convicted and sentenced pursuant to the YOA. In 1989, when he was 19 years old, Moon was convicted of possessing marijuana with intent to distribute in Laurens County general sessions court. Under the YOA, the court imposed an "indeterminate sentence," and Moon was released after approximately six months. In 1991, when he was 20 years old, Moon was convicted of second-degree burglary in Laurens County general sessions court. Moon was again granted leniency under the YOA and received two years of probation and a suspended sentence. As Moon acknowledges, both offenses carried maximum sentences over one year. *See* S.C. Code Ann. § 44-53-370(b)(2) (1989) (marijuana possession with intent to distribute); S.C. Code Ann. § 16-11-312 (1991) (second-degree burglary).

Nothing in our precedent or South Carolina law supports Moon's argument that offenders do not receive "convictions" unless they actually served over a year in prison. In *Sitton*, we extensively examined the YOA and explained that so long as South Carolina offenders were "adjudged guilty in general sessions court," as Moon was, they have received an "adult conviction." 21 F.4th at 874.

Because convictions occur whenever defendants are "adjudged guilty" in general sessions court, Moon was, in fact, "convicted" of possession of marijuana with intent to

10

distribute and second-degree burglary even though he served less than a year in each case. *Id.* And because the maximum term of imprisonment for each offense exceeded one year, they are properly considered felony convictions for purposes of § 922(g)(1). Moon concedes his possession of the shotgun, so there can be no doubt that he was guilty of being a felon in possession of a firearm. And because of his clear guilt, he cannot demonstrate that his "acts, deeds, or omissions in connection with such charge constituted no offense against the United States." 28 U.S.C. § 2513(a)(2).

### C.

The third prong of the § 2513 inquiry requires the petitioner to demonstrate that "he did not by misconduct or neglect cause or bring about his own prosecution." *Id.* This requirement is stringently enforced. We have held that even if the petitioner was actually innocent of fraud—because he did not intend to defraud his employer—his "neglect" in failing to seek board approval for questionable transactions was sufficient to deny him a certificate of innocence. *Graham*, 608 F.3d at 174. And in *Mills*, we made explicit that a contemporaneous but uncharged crime can constitute "misconduct or neglect" barring recovery. 773 F.3d at 570. Analyzing this third prong therefore requires an assessment of the "virtue of a petitioner's behavior" embracing both conduct "originally [] charged as crimes" and "noncriminal conduct." *Graham*, 608 F.3d at 174, 177.

Moon's conduct was far from virtuous. Even putting to one side his unlawful possession of a firearm, two other acts of misconduct led to his prosecution: his violation of South Carolina traffic safety law and his possession of illegal drugs.

11

On January 14, 2005, Moon ignored a stop sign in violation of South Carolina law. *See* S.C. Code Ann. § 56-5-2330(b) (2005) (requiring "every driver of a vehicle approaching a stop sign" to "stop at a clearly marked stop line"); *Id.* § 56-5-590 (2005) (defining "stop" as a "complete cessation from movement" where required). This act brought Moon to the attention of law enforcement, which led to the search of his vehicle and the discovery of illicit drugs and an illegal firearm. Moon's decision to ignore the stop sign—a violation of the law putting pedestrians and other motorists at risk—constitutes misconduct which was a but-for cause of his conviction.

Moon's driving was not the only act of misconduct that led to his prosecution. Moon's possession of methamphetamine, marijuana, an electronic scale, and a firearm gave every impression that he was engaged in drug dealing. On this basis, the government separately indicted him for possession of methamphetamine and marijuana with intent to distribute. While the government dismissed this second charge after Moon pleaded guilty to being a felon in possession of a firearm, likely concluding that the 15-year ACCA sentence was sufficient, the text of § 2513 refers to the petitioner's "caus[ing] or bring[ing] about his own *prosecution*" as a whole. 28 U.S.C. § 2513(a)(2) (emphasis added). Moon's possession of illegal drugs in a manner suggesting distribution was clearly misconduct. And because the government made the determination to charge it as the second count of the indictment, it is clear that this misconduct brought about his prosecution.

Moon appears to recognize that under the statute's plain text, his multiple acts of misconduct further undercut his bid for a certificate of innocence. To overcome this difficulty, Moon effectively asks this court to read prong three out of the statute entirely.

12

*See* Opening Br. at 28 (arguing that it is "difficult to imagine a situation in which a wrongful conviction could occur without some arguably neglectful behavior or misconduct"). This we refuse to do. Section "2513 can be given full effect only if a court does not overlook any of its provisions." *Mills*, 773 F.3d at 570. Any change in the statute is for Congress not this court to make, so we apply the law as written.

III.

For the forgoing reasons the judgment of the district court is

*AFFIRMED.*