# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 6, 2021        Decided August 3, 2021

No. 20-3005

UNITED STATES OF AMERICA,
APPELLEE

v.

ALVIN GASKINS,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cr-00379-6)

---

*Daniel Hornal* argued the cause and filed the briefs for appellant.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Elizabeth Trosman* and *James S. Sweeney*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, HENDERSON and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

PILLARD, *Circuit Judge*: Alvin Gaskins seeks a certificate of innocence under 28 U.S.C. § 2513. A certificate of innocence is not only a formal declaration of innocence but also a prerequisite to a claim against the United States for compensation for wrongful conviction and imprisonment. Gaskins served almost eight years of a twenty-two-year sentence of imprisonment on a narcotics conspiracy charge before we reversed his conviction on direct appeal for insufficient evidence. *See United States v. Gaskins*, 690 F.3d 569, 576 (D.C. Cir. 2012). At his criminal trial, Gaskins had invoked his constitutional right not to testify. But, after this court reversed his conviction, he sought limited discovery and a chance to testify in support of his motion for a certificate of innocence. The government opposed the certificate of innocence but not Gaskins' procedural requests. The district court denied the certificate of innocence without acting on Gaskins' motion for discovery and a hearing.

A failure to prove criminal culpability beyond a reasonable doubt requires acquittal but does not necessarily establish an individual's innocence. On a motion for a certificate of innocence, the burden is on the claimant to prove his innocence by a preponderance of the evidence. Presented with an acquittal on the ground that the evidence failed as a matter of law to establish guilt beyond a reasonable doubt, the district court deciding the innocence question must at least apply the distinct burden allocation and standard of proof to the relevant evidence.

We hold that the district court erred by denying Gaskins' motion for a certificate of innocence without addressing his procedural motion. The key issue bearing on whether Gaskins is entitled to the certificate concerns his state of mind, that is, whether he agreed to work with co-conspirators with the

specific intent to distribute drugs. The actions the trial evidence shows he took do not add up to the charged offenses unless he agreed to join the conspiracy. In the circumstances, the district court's *sub silentio* denial of Gaskins' unopposed request for an opportunity to augment the record was error. We accordingly vacate the denial of the certificate of innocence and remand for further proceedings.

We deny the request to reassign the case and decline to reach Gaskins' merits argument that the existing record requires an innocence finding. We need not now canvass the record of Gaskins' criminal trial to determine whether it alone might allow, or even require, a finding of innocence. The precise question whether the district court erred in holding on the current record that Gaskins was not innocent may be obviated, depending on how the district court responds to Gaskins' requests for limited discovery and an evidentiary hearing. As for reassignment, trial judges routinely must and do revisit their own prior rulings with an open mind to redress errors identified on appeal; we have no reason to think the district judge will not do so here.

## BACKGROUND

### 1. Statutory Context

Since 1938, Congress has offered relief in the form of compensation to any innocent person "unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495; *see also* Act of May 24, 1938, ch. 266, 52 Stat. 438 (codified at 18 U.S.C. §§ 729-732 (1940)). Judging from the paucity of decided cases, claims for such compensation have been infrequent. Most of those cases post-date Congress's 2004 statutory amendment raising the compensation cap from a $5,000 total to a maximum of $50,000 for each year of

incarceration, or up to $100,000 per year of incarceration awaiting a sentence of death. *See* 28 U.S.C. § 2513(e).

To establish a right to compensation, a claimant must "allege and prove" certain "requisite facts." *Id.* § 2513(a)-(b). First, the claimant must show that "[h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted." *Id.* § 2513(a)(1). Second, the claimant must establish either that "[h]e did not commit any of the acts charged" or that "his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia." *Id.* § 2513(a)(2). Finally, he must show that "he did not by misconduct or neglect cause or bring about his own prosecution." *Id.*

Requisite factual findings must appear in either a presidential pardon, *see id.* § 2513(a)(1), (b), (c), or, as relevant here, a certificate of innocence from a court, *id.* § 2513(b)—together with the record, including the acquittal decision itself, *id.* § 2513(a)(1). A petition for a judicial certificate of innocence may be filed "under the existing criminal docket number" or "as a separate, miscellaneous civil case." *Abu-Shawish v. United States*, 898 F.3d 726, 736 (7th Cir. 2018). A claimant who succeeds in obtaining such certificate or pardon may then submit it to the Court of Federal Claims for an award of compensation from the United States. *See* 28 U.S.C. §§ 2513, 1495.

**2. Gaskins' Criminal Case**

We described in detail the background of Gaskins' criminal case in our opinion reversing his conviction, *see Gaskins*, 690 F.3d at 571-76, and recount it only briefly here.

In 2006, "[a] jury convicted Gaskins of being a member of a conspiracy [to distribute drugs] that was alleged to have consisted of more than twenty individuals and to have taken place over a period of five years." *Id.* at 571. Gaskins was tried with three of the other defendants, including the two alleged leaders of the conspiracy, who were found guilty on most counts, and an individual charged as a supplier of phencyclidine (PCP) for the conspiracy, who was acquitted. *Id.* at 572, 576. The jury acquitted Gaskins of five of the six counts against him: four related to using a communication facility to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b), and one charging conspiracy to participate in a racketeer influenced corrupt organization in violation of the RICO statute, 18 U.S.C. § 1962(d). *Id.*

The jury found Gaskins guilty on the charge of conspiring to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. The jury initially returned the verdict form with "guilty" checked as to the general question regarding narcotics conspiracy, but "not proven" checked as to each of the four controlled substances—heroin, cocaine, cocaine base, and PCP—charged as objects of the conspiracy. *Id.* at 576; *see also* Verdict Form at 48-51, *United States v. Gaskin*s, No. 04-cr-00379 (D.D.C. Dec. 5, 2006), ECF No. 904. The district court denied Gaskins' request for a judgment of acquittal and sent the narcotics conspiracy charge back to the jury, which again marked "guilty" of narcotics conspiracy, but this time identified heroin distribution as the "proven" object of the conspiracy. *Gaskins*, 690 F.3d at 576; *see also* New Verdict Form, *United States v. Gaskin*s, No. 04-cr-00379 (D.D.C. Dec. 5, 2006), ECF No. 905.

In 2008, the district court sentenced Gaskins to 262 months, or nearly twenty-two years, in prison for his role in conspiring to distribute heroin. *Gaskins*, 690 F.3d at 576. By

that time, because he was held without bond before trial, he had already served nearly three and a half years in prison.

In 2012, on Gaskins' direct appeal, we overturned his conviction for evidentiary insufficiency. *See id.* at 571-72. We recounted that, during a trial that lasted for three months, *see id.* at 576, "the government proffered eight cooperating witnesses, more than 14,000 intercepted telephone conversations, visual and video surveillance, and evidence seized during the execution of search warrants," *id.* at 571-72. The government presumably could have pinned down any bases for Gaskins' knowledge of the drug transactions by asking the cooperators to recount in detail the nature of his involvement. After all, every cooperator save one faced a life sentence if he did not obtain a downward departure for testimony useful to the government. *Id.* at 573. Given the depth of the investigation and character of the evidence amassed, we thought it remarkable that

> [n]ot one piece of evidence put Gaskins together with drugs, or conversations about drugs, involved in the conspiracy. None of the cooperating witnesses, many of whom pled guilty to participating in the conspiracy, described Gaskins as having any knowledge of the conspirators' drug trafficking activities. None of the recorded telephone conversations in which Gaskins participated mentioned drugs or drug transactions, whether in clear or coded language. Nor did any of the conversations of any other conspirators mention drugs or drug transactions in connection with Gaskins. No surveillance detected Gaskins engaging in drug transactions, in the presence of drugs, or engaging in any conspiratorial meetings. And

despite the execution of multiple search warrants, including one at the apartment in which Gaskins lived, the government found no guns, drugs, or drug paraphernalia associated with Gaskins. Moreover, although there was substantial evidence of the wealth amassed by other conspirators, there was no such evidence regarding Gaskins. To the contrary, the only evidence was that he lived in a modest apartment with his mother.

*Id.* at 572. We therefore reversed Gaskins' conviction. We concluded that, on the evidentiary record, no rational trier of fact could have found beyond a reasonable doubt that Gaskins knowingly joined with other individuals with the specific intent to further the unlawful objective of drug distribution. *Id.*; *see also id.* at 576-77. By then, Gaskins had served nearly eight years in prison. *Id.* at 576.

### 3. Gaskins' Motion for a Certificate of Innocence

In June 2017, Gaskins filed a motion for a certificate of innocence pursuant to section 2513. His position all along—in the criminal case, *see id.* at 575, and in seeking a certificate of innocence—has been that he never joined a narcotics conspiracy, but worked as a "gofer" for Frederick Miller, a since-convicted leader of the conspiracy, running personal errands for Miller and carrying out various administrative tasks for Dream Team Investigations (DTI), Miller's private investigations company. Gaskins argued in support of the certificate that the "absence of inculpatory evidence, occurring against the background of an extensive investigation and testimony from many cooperating witnesses who were deeply involved in all aspects of the conspiracy, was noted by the D.C. Circuit as strong evidence that [he] did not commit the acts

charged." J.A. 19. Gaskins claimed that "[t]he most reasonable explanation for these inconsistencies is that [he] in fact had no knowing involvement with the conspiracy nor intent to further it." J.A. 19.

As an initial supplement to the trial record, Gaskins submitted three affidavits in support of his motion for a certificate of innocence. Gaskins worked for Miller during the relevant period, and Miller attested that Gaskins "had no role whatsoever in any conspiracy to distribute narcotics during the time of his employment at DTI," which Miller averred was "a legitimate business." J.A. 25. The two other affidavits were from individuals who recounted that they hired DTI as a legitimate business for lawful tasks. *See* J.A. 22, 26. Gaskins submitted the affidavits to corroborate his claim that, while he worked for DTI, he believed that it was a legitimate investigative firm doing lawful work, contrary to the government's position when it prosecuted Gaskins that he knew DTI was a front for the narcotics conspiracy, and that his work was circumstantial evidence of his agreement to the conspiracy.

For its part, the government in opposing Gaskins' motion for a certificate recounted the trial evidence, *see* J.A. 30-42, and "quoted the district court's findings in denying [Gaskins'] post-trial motion for a judgment of acquittal," Appellee's Br. 24 (citing J.A. 45-47). On the key question whether Gaskins agreed to join the conspiracy with the specific intent to further its aim of drug distribution, the government took the position that, "although the government did not prove *scienter* beyond a reasonable doubt . . . [t]he direct and circumstantial evidence presented at trial indicate strongly that the defendant indeed knowingly participated in this narcotics conspiracy." J.A. 27.

9

The evidence the government saw as persuasive of Gaskins' involvement was that:

- Gaskins rented (but did not inhabit) an apartment that the conspirators used as a "stash house" for drugs and drug money, J.A. 28; *cf. Gaskins*, 690 F.3d at 574-75, 578-79;

- Gaskins subscribed to a cellphone that he turned over to Miller, who used it for drug business, and Gaskins arranged for quick-turnaround flights for Miller's cousin, Charles Brown, a co-defendant who pleaded guilty to working as a cash courier, J.A. 28; *cf. Gaskins*, 690 F.3d at 573-75, 579-80; and

- Gaskins performed various financial tasks for DTI that in fact aided the drug conspiracy, J.A. 28; *cf. Gaskins*, 690 F.3d at 575-76, 580-81.

In the government's view, Gaskins "knowingly performed, under suspicious circumstances, a variety of administrative tasks that were essential to the conspiracy's operation," and it was "incredible . . . that he performed these functions for a legitimate business." J.A. 28.

In his reply brief in support of the motion for a certificate, Gaskins said that he would "be submitting a motion requesting a hearing so he may plead his case, and also requesting limited discovery." J.A. 52. He attached several redacted documents he had obtained through FOIA requests, including one that appears to be a summary of an FBI witness interview with Miller during a search of his residence. In that interview, Miller said that Gaskins "handle[d] paperwork for the business, but that's it," yet noted "that it appears like 'Faggy Alvin' (ALVIN GASKINS) will get the blame for everything." J.A.

69. Wording immediately adjacent to those comments is redacted from the FOIA copies.

In November 2018, about ten months after he filed his reply brief, Gaskins filed a "motion for a scheduling conference," communicating his expectation that "the Court would open limited discovery and . . . set a date for an evidentiary hearing." J.A. 86 (formatting modified). In that filing, Gaskins urged that, if the district court did not find his motion for a certificate of innocence "sufficient" on the existing record, he "require[d] an evidentiary hearing where [he] could testify, subject to cross examination, of the circumstances leading up to his arrest." J.A. 86. Gaskins noted that he did "not have the resources to engage in extensive discovery," J.A. 87, but stated that "a fair hearing would also require some limited discovery," J.A. 86-87. He thus "request[ed] the right to propound a limited number of requests for document production and interrogatories." J.A. 87.

The government never opposed Gaskins' motion for limited discovery and an evidentiary hearing. *See* J.A. 1; Oral Arg. Tr. 22:5-12. After his motion for a certificate of innocence had been pending for approximately two years, Gaskins moved in June 2019 to expedite ruling on his pending motions. *See* J.A. 1. Six months later, in December of that year, the district court denied Gaskins' motion for a certificate of innocence. *See* J.A. 100-07.

The court's memorandum order began by noting that Gaskins bore the burden to prove by a preponderance his entitlement to a certificate of innocence, J.A. 101, emphasizing that "[e]stablishing a likelihood [of innocence] is a tougher task than establishing reasonable doubt [of guilt]," J.A. 102. The court acknowledged that the first requirement, that Gaskins' conviction was "reversed or set aside on the ground that he is

not guilty of the offense of which he was convicted," was met by our decision on direct appeal. J.A. 102 (formatting modified). But on the next requirement, the court held that Gaskins had not established "that he is actually innocent by a preponderance of the evidence." J.A. 103 (formatting modified). "Gaskins does not dispute that he provided logistical support to the conspiracy but maintains that he did so unwittingly." J.A. 103. The court noted that "Gaskins' failure to immerse himself more fully in the drug ring paid off in the form of a reversed conviction," J.A.103-04, but that "limited participants in a conspiracy are conspirators nonetheless," J.A. 104. As the district court saw it, "Gaskins is unlikely to be innocent" because he "supported the conspiracy for years" by booking several flights that conspirators took to negotiate or complete drug transactions, purchasing cellphones under his name but at the behest of conspirators who used them to coordinate drug transactions, and leasing an apartment under his name that conspirators then used as a stash house. J.A. 104.

The court rejected Gaskins' assertions that he "knew nothing of the illicit nature of the flights, phones, or apartment" and provided them thinking they were for DTI, the private investigations business. J.A. 104. The court pronounced that "DTI was a front for the drug ring, and hardly pretended to be an honest enterprise," pointing to the fact that, as the government showed at Gaskins' trial, DTI received no funds from federal or local courts for investigations on behalf of indigent defendants. J.A. 105. The court inferred that, "[m]ost likely, someone closely involved in DTI's operations would have known" about its lack of legitimate business and incoming funds. J.A. 105. The district court did not explain why payments from federal or local courts were a necessary or expected incident to a legitimate private investigations business. *Cf. Gaskins*, 690 F.3d at 581 (concluding that the government's evidence that DTI was not a real business, *i.e.*,

"that DTI had not been paid by the public defenders' offices," was "hardly substantial"). The district court likewise dismissed Gaskins' attempt "to normalize [his] behavior" of "consistently signing his name to items and immediately turning them over to co-conspirators." J.A. 105. It observed that Gaskins' "alternative explanations" were "all *possible*. But possible will not win him the day." J.A. 105-06. The court underscored that, in its view, "Gaskins is not collateral damage in a conspiracy he was tricked into participating in—he is a co-conspirator himself." J.A. 106-07.

Nowhere in the eight-page order did the district court mention Gaskins' motion for limited discovery and an evidentiary hearing. The court never entered any order, minute order, or other docket entry addressing it. *See* J.A. 1. Nor did the court refer to the three affidavits and redacted FOIA documents that Gaskins had already submitted in support of his motion for a certificate of innocence.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1291. *See Betts v. United States*, 10 F.3d 1278, 1282 (7th Cir. 1993).

## DISCUSSION

A claimant seeking a certificate of innocence bears the burden of proof of the facts required by section 2513(a). *See Rigsbee v. United States*, 204 F.2d 70, 72 n.2 (D.C. Cir. 1953) (citing *United States v. Keegan*, 71 F. Supp. 623, 635-36 (S.D.N.Y. 1947)). Entitlement to a certificate requires that a preponderance of the evidence—the default standard in civil cases—support each of the requisite elements. *See United States v. Abreu*, 976 F.3d 1263, 1270 (11th Cir. 2020) (collecting cases).

Gaskins urges us to reverse the district court's denial of his motion for a certificate of innocence on the ground that "[t]here is very strong evidence of [his] factual innocence already on the record, such that he has proven his innocence by a preponderance." Appellant's Br. 5. Alternatively, he seeks vacatur of the district court's order and remand for the limited discovery and evidentiary hearing that he sought. He notes that "[t]he issues upon which the district judge based his denial of Mr. Gaskins' motion were barely developed at trial." *Id.*

If we remand for further proceedings, Gaskins argues, we should reassign the case to a different district judge. He asserts reassignment is warranted because of both the "structural concern" inherent in "ask[ing] a judge to determine if evidence he or she already found to be proof beyond a reasonable doubt of guilt could, at the same time, be proof by the preponderance of the evidence of innocence," *id*. at 24-25, and what Gaskins views as signs of bias against him in this case, *id*. at 29.

We vacate the denial of the certificate of innocence and remand for further proceedings because the district court denied Gaskins' motion for a certificate without acknowledging or addressing his motion for limited discovery and a hearing. The district court on remand must rule on Gaskins' procedural requests and reconsider his motion for a certificate of innocence in light of its ruling. However, we see no basis requiring reassignment of this case to a different district judge, so deny Gaskins' request for reassignment on remand.

### 1. Gaskins' Section 2513(a) Certificate-of-Innocence Claim

All agree that Gaskins has satisfied the first of the three requirements of section 2513(a)—that "[h]is conviction has been reversed or set aside on the ground that he is not guilty of

the offense of which he was convicted." 28 U.S.C. § 2513(a)(1). Our decision on direct appeal overturning his narcotics conspiracy conviction for insufficient evidence established that he had not been proven guilty of the heroin conspiracy charge on which he was convicted. *See* J.A. 102.

Gaskins acknowledges that, "as a general rule, an opinion overturning a conviction for lack of evidence is not enough" to satisfy at least the first of the two ways to meet the second requirement of section 2513(a), Oral Arg. Tr. 16:21-23: that the claimant show that he "did not commit any of the acts charged," 28 U.S.C. § 2513(a)(2). *Cf. Betts*, 10 F.3d at 1284 (holding that a prior appellate opinion, which overturned the claimant's contempt conviction because the scheduling order with which he failed to comply was not sufficiently specific to compel his attendance, "ma[de] clear" that the claimant's conduct did not constitute a crime, satisfying the second of the two ways to meet the second requirement of section 2513(a)). Even though there are only a handful of appellate decisions on certificates of innocence, the general point that a finding of innocence differs from an acquittal seems well established.

In *Rigsbee v. United States*, the first of only two opinions from our court applying section 2513, we explained that "there would be no point in requiring the certificate of the court" if nothing more than the reversal of a conviction were ever needed to satisfy section 2513. 204 F.2d at 72 n.2 (quoting *Keegan*, 71 F. Supp. at 636). "Had the Congress intended to authorize suit for damages in the Court of Claims . . . simply because" a conviction was set aside, *id.* at 71, it would not have further required a finding that the claimant "did not commit the acts charged or that, if he did, his acts were . . . not criminal," *id*. at 72.[1] Other circuits concur. In *Pulungan v. United States*,

---

[1] We also addressed section 2513 in *Diamen v. United States*, 604 F.3d 653 (D.C. Cir. 2010). But that opinion concerned "a purely

for example, the Seventh Circuit reiterated its adherence to our holding in *Rigsbee* "that, for the purpose of § 2513, acquittal differs from innocence," because "[a] conclusion that the prosecutor did not prove a charge beyond a reasonable doubt differs from a conclusion that the defendant is innocent in fact." 722 F.3d 983, 985 (7th Cir. 2013). And, since *Rigsbee*, "every later court that has considered the subject has agreed." *Id*.; *see, e.g.*, *Abreu*, 976 F.3d at 1272. In recognizing the general rule, we need not address whether certain acquittals might alone suffice to establish innocence. *See Abreu*, 976 F.3d at 1273 (reserving the question whether "an appellate decision reversing a conviction for insufficient evidence can by itself entitle a person to a certificate of innocence"); *see also Betts*, 10 F.3d at 1284; *Keegan*, 71 F. Supp. at 626, 632, 638 (noting congressional attention to convictions based on mistaken identity as examples of punishment of persons who were "entirely innocent").

The government asserts that Gaskins relies on only the first of the two routes for satisfying what is often referred to as the "actual innocence" requirement, *i.e.*, he contends that he did not in fact commit the acts charged because he lacked the knowledge and requisite specific intent to further the conspiracy's objective, not that his acts constituted no crime. Appellee's Br. 36. Gaskins has not directly responded to that assertion, and we need not resolve the point. For current purposes, it suffices to say that Gaskins asserts his innocence on the ground that "[t]here is no evidence" that he "either

---

legal issue" not presented here: whether the estate of a defendant who had sought habeas relief but died before the district court could issue the writ nonetheless could obtain a certificate of innocence. *Id.* at 655. We held that the estate could not obtain the certificate because the deceased defendant's conviction had not first "been reversed or set aside" as required under section 2513(a)(1). *Id.* at 654.

agreed to participate or acted with the specific intent to further [the conspiracy's] aims." Appellant's Br. 10.[2]

As noted above, Gaskins does not equate every reversal for want of evidence with a finding of innocence. *See also* Reply Br. 13. Rather, he casts this as the unusual case in which, even though he bears the burden to establish his innocence, that burden has already been met. *See* Oral Arg. Tr. 16:8-20:21. He appears to make two related arguments to that effect. We reject the first and decline to reach the second given our decision that a remand is required in any event.

First, Gaskins contends that, even though not all decisions vacating criminal convictions for evidentiary insufficiency necessarily constitute findings of innocence, our earlier decision in his case does. He highlights our holding that "there was no affirmative evidence that [he] knowingly joined the narcotics conspiracy or had the specific intent to further its aims." Appellant's Br. 1; *see id*. at 4-5 (seeking reversal of the denial of a certificate on the ground that "the district court's order directly contradict[s] this court's findings," *id.* at 5); *id.* at 8-9; Oral Arg. Tr. 16:8-18:20. That claim closely parallels

---

[2] The district court noted that "limited participants in a conspiracy are conspirators nonetheless." J.A. 104. Of course, conduct that in fact materially benefits conspirators without the requisite knowledge of and intent to further the conspiracy is no crime. *See, e.g.*, *United States v. Lorenzo*, 534 F.3d 153, 160 (2d Cir. 2008) (holding that mere "presen[ce] at and participat[ion] in events that furthered the conspiracy" could not support a narcotics conspiracy conviction where "there [wa]s insufficient evidence to show" knowledge of and specific intent to further that conspiracy); *see also Gaskins*, 690 F.3d at 580 & n.5 (explaining that mere association with conspirators could not support the conviction); Appellant's Br. 10 & n.2 (noting Delta Airlines' innocence where it unwittingly aided the narcotics conspiracy by transporting conspirators). To the extent that the district court held otherwise, that was error.

one the Eleventh Circuit rejected in *United States v. Abreu*, 976 F.3d at 1273, and we likewise hold it unavailing here.

We need go no further than the court did in *Abreu*: We hold only that "on the particular facts before us" the prior appellate decision does not by itself amount to a finding of innocence. *Id.* at 1273 n.6. To be sure, we emphasized that "there was no affirmative evidence that Gaskins knowingly joined the narcotics conspiracy or had the specific intent to further its aims." *Gaskins*, 690 F.3d at 577. But, again, that opinion addressed only whether any "reasonable jury could have found, beyond a reasonable doubt, that Gaskins knowingly entered into a conspiracy with the specific intent to further the objective of distributing narcotics." *Id.* at 582. We had no occasion to opine on whether a preponderance of the evidence from the criminal trial showed Gaskins to be innocent of the crime on which he was convicted and imprisoned, as necessary to satisfy the second requirement of section 2513(a). A record lacking evidence sufficient to prove criminal culpability beyond a reasonable doubt certainly might also support a finding of innocence by a preponderance for purposes of section 2513. But the difference in standards and allocation of burdens between a criminal trial and a civil proceeding for a certificate of innocence will generally necessitate a distinct determination.

Gaskins' second argument is not so readily dispatched. Apart from his reliance on what he takes to be a finding of innocence in our prior opinion, Gaskins contends that the underlying record—measured against the applicable civil burden and standard, even without the discovery and evidentiary hearing he sought—legally entitles him to such a finding. *See* Appellant's Br. 5 ("There is very strong evidence of Mr. Gaskins' factual innocence already on the record, such that he has proven his innocence by a preponderance."); *id.* at

9-18; Oral Arg. Tr. 18:21-20:21. He canvasses the evidence in the record and argues that it not only fails to support the district court's memorandum order but actually requires the opposite conclusion.

Gaskins' task on this second theory would be akin to that of a civil plaintiff seeking judgment in his favor on a fact question on which he bears the burden of proof. *See generally* Fed. R. Civ. P. 50(a); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148-50 (D.C. Cir. 1997) (upholding district court's grant of judgment as a matter of law to party bearing the burden of proof because, on the question whether the movant acted reasonably, "no reasonable fact-finder could find that [the movant's] decision . . . was unreasonable under the uncontested facts of this case," *id.* at 149); *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 165-66 (D.C. Cir. 2015) (stating that judgment as a matter of law for the party with the burden of proof "is reserved for those extreme circumstances where the effect of the evidence is not only sufficient to meet [the] burden of proof, but is overwhelming, leaving no room for the jury to draw significant inferences in favor of the other party" (quoting *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990))).

In Gaskins' view, even without his testimony directly denying that he ever agreed with the others to work together to distribute narcotics, there is no record basis from which a factual determination might reasonably be made that he did. "[W]hen you look at the constellation of evidence," Gaskins contends, "regardless of what this Court said in its previous opinion," the evidentiary record "proves . . . even beyond a shadow of a doubt" that he was not involved in the drug conspiracy. Oral Arg. Tr. 19:23-20:3. He reviews in detail and offers rebuttals to the facts the district court cited as suggesting that Gaskins knew that Miller and other conspirators were dealing drugs. *See* Appellant's Br. 9-18.

We decline to rule on that claim in the current posture. It would be premature to do so here, before the record has been determined to be complete. Because, as we discuss below, we vacate the district court's decision to deny the certificate without ever ruling on Gaskins' procedural motion, we need not draw conclusions from the record as it stands. If the district court gives Gaskins the opportunity he seeks for limited discovery and to testify under oath, that additional evidence could affect the court's assessment of the merits and, in any event, would pose the issue on a record that differs in ways that could prove material.

Nor need we reach the third requirement of section 2513(a)—that Gaskins show he "did not by misconduct or neglect cause or bring about his own prosecution." 28 U.S.C. § 2513(a)(2). That requirement, too, necessitates a factual determination that any discovery or testimony on remand could affect. We note only that what counts as bringing about one's own prosecution within the meaning of section 2513(a)(2) remains an open question in our circuit. *Compare Betts*, 10 F.3d at 1285 (the requirement means that the person seeking a certificate "must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense," *e.g.*, by "falsely confess[ing] to a crime or intentionally withhold[ing] exculpatory evidence"), *and United States v. Grubbs*, 773 F.3d 726, 732 n.4 (6th Cir. 2014) (endorsing the *Betts* approach), *with United States v. Graham*, 608 F.3d 164, 174 (4th Cir. 2010) (rejecting the *Betts* approach and instead reading section 2513(a)(2) to call for an assessment of "the virtue of a petitioner's behavior even when it does not amount to a criminal offense" (internal quotation marks omitted)).

### 2. Gaskins' Procedural Requests

The district court denied Gaskins' motion for a certificate of innocence without addressing his unopposed motion for limited discovery and an evidentiary hearing. Gaskins and the government agree that abuse of discretion is the appropriate standard for reviewing the district court's denial of Gaskins' procedural requests. Oral Arg. Tr. 8:14-9:7; Appellee's Br. 47; *see also Abu-Shawish*, 898 F.3d at 737.

As discussed above, a certificate of innocence requires determinations of fact. Section 2513 places the burden to show innocence—including lack of culpable intent—on a claimant who in many cases will not have testified at the criminal trial. The government itself acknowledges that, with "an inchoate crime like conspiracy, . . . your best evidence" is "[w]hat is in Mr. Gaskins' mind." Oral Arg. Tr. 24:21-22; *see id.* at 36:14-15; *cf. Gaskins*, 690 F.3d at 581 (citing Oral Arg. Rec. 23:12-22 (government acknowledging that, because Gaskins never testified, the jury could not infer that he lied about DTI)). Section 2513 also requires a showing that the claimant did not bring about his own prosecution by misconduct or neglect—a matter not explored at all in the typical criminal trial. Before making those determinations, as to which the claimant bears the burden of proof and the government shifts to the rebuttal role, ordinary civil procedure principles suggest that a district court would generally allow both sides to submit evidence. *See Abu-Shawish*, 898 F.3d at 739.

A pair of Seventh Circuit opinions is instructive. In *Abu-Shawish v. United States*, the court vacated an order denying a certificate of innocence and remanded for further proceedings because "Abu-Shawish received no meaningful opportunity to be heard." *Id.* at 737. The claimant's "petition was dismissed without any response from the government, without any

briefing or hearing, and by imposing a pleading standard not compatible with civil proceedings and without an opportunity to try to cure the pleading defects identified by the district court." *Id.*[3]

And that circuit's decision in *Pulungan* shows that a need for an evidentiary hearing can cut the other way. There, the court reversed and remanded a grant of a certificate of innocence where the district court "did not hold a hearing." 722 F.3d at 985. On direct appeal, the court had reversed Pulungan's conviction for attempting to export defense articles without a license because of insufficient evidence that he knew a license was required, *id.* at 984; it also held that the district court had erred in instructing the jury that the riflescopes at issue were "defense articles" as a matter of law, *id.* at 985. Without a hearing, the court of appeals held, the record could not support the certificate of innocence because, if the riflescopes Pulungan sought to export met the regulatory criteria for defense articles—a fact issue never resolved in his favor because of the erroneous jury instruction, *id.*—"then as a practical matter Pulungan could show actual innocence only by testifying about his knowledge; the judge then could determine whether he [wa]s telling the truth," *id.* at 986.

Cases illustrating a need for an evidentiary hearing on claims of innocence do not mean that additional evidentiary

---

[3] The dissent points out that Abu-Shawish, unlike Gaskins, did not have a lawyer. Dissent 9. But the Seventh Circuit focused on that fact only in relation to the "too stringent a [pleading] standard" that the district court applied to Abu-Shawish's petition for a certificate of innocence, *Abu-Shawish*, 898 F.3d at 737—and nonetheless said that, even under the ordinary standard for persons represented by counsel, *see* Fed. R. Civ. P. 15(a)(2), the district court would have erred in denying the petition without leave to replead, *see Abu-Shawish*, 898 F.3d at 738.

development will always be sought or needed. If the claimant "declines to submit additional evidence—by affidavit or otherwise—the district court could properly resolve the petition based on the trial records alone." *Abu-Shawish*, 898 F.3d at 739. In *Abreu*, for example, because the claimant "chose to base her request for a certificate of innocence solely on" the prior decision vacating the conviction, and neither sought an evidentiary hearing nor asked for leave to submit evidence before the district court, the Eleventh Circuit found no error in the district court's decision to deny the certificate without augmenting the record from the criminal trial. 976 F.3d at 1275; *see id.* at 1266, 1269.

Here, Gaskins expressly requested that, if the court did not find his motion for a certificate "sufficient" based on the trial record together with the affidavits and FOIA documents attached to his motion, it convene "an evidentiary hearing where [he] could testify, subject to cross examination, of the circumstances leading up to his arrest." J.A. 86. He specified that "a fair hearing would also require some limited discovery." J.A. 86-87. The requests were directly aimed at filling evidentiary gaps, if any there were. He sought, for example, DTI's papers, which the government had seized, to help him support his contention that he did what he believed was legitimate work for DTI. *See* J.A. 90; Appellant's Br. 21-22. Gaskins also asked to see unredacted versions of the documents he had received through FOIA requests and attached to his reply brief on the motion for a certificate. *See* J.A. 88-89; Appellant's Br. 21-22. The government says that Gaskins does not need access to the unredacted summary of what seems to be an FBI witness interview with Miller because Gaskins submitted an affidavit from Miller with his motion for a certificate and thus "could have had Miller explain his redacted interview statements." Appellee's Br. 52. But the unredacted summary, as a contemporaneous account, could be a source of

valuable information, beyond any recollection of the interview that Miller might provide (assuming the document reflected an interview of Miller and not someone else).

The government opposed Gaskins' motion for a certificate of innocence but not his motion for limited discovery and an evidentiary hearing. *See* J.A. 1; Oral Arg. Tr. 22:5-12. The government's acquiescence to Gaskins' procedural requests naturally raises the prospect of their being granted. At a minimum, the district court must explain their denial.

Before us, the government faults Gaskins for failing to submit his own affidavit with his motion for a certificate, even as he submitted affidavits from three other people, *see, e.g.*, Oral Arg. Tr. 27:19-28:5—a point never made below. In any event, Gaskins stated that he was ready and willing to testify. J.A. 86. His failure to preview his testimony in an affidavit does not defeat his request. Indeed, given the centrality of Gaskins' own credibility to the decision on the motion for a certificate, there is little chance the district court would have credited any affidavit Gaskins might have submitted without affording the government an opportunity to cross-examine him. If the government or the court thought he should submit an affidavit either in advance or in lieu of live testimony, it failed to say so at the time. Gaskins' request for limited discovery and a chance to testify explained what he sought and why. No more was required to preserve his claim to an opportunity to supplement the record of the criminal trial.

In its memorandum order denying Gaskins' motion for a certificate, the district court never acknowledged those requests. Yet it rejected Gaskins' arguments on section 2513(a)(2)'s actual-innocence requirement because, while they were "all *possible*," it found "the more likely explanation to be that Gaskins knew of the conspiracy and participated in it

anyways." J.A. 105-06. Gaskins' requests aimed at developing the key factual issue of his own state of mind. On this record, we can discern no grounds for implicitly denying the limited discovery and evidentiary hearing that Gaskins requested and that could have rendered probable the acknowledged possibility that Gaskins' innocence claim is valid.

When a court vested with discretion makes a decision that is neither self-explanatory nor supported with any reasoning, we vacate and remand for explanation rather than guess at its grounds. *See, e.g.*, *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) (remanding for explanation of discretionary decision to seal certain documents); *Jackson v. Culinary Sch. of Wash., Ltd.*, 59 F.3d 254, 255-56 (D.C. Cir. 1995) (remanding for explanation of discretionary decision whether to grant declaratory relief). "When we review a district court's decision for an abuse of discretion, it is imperative that a district court articulate its reasons." *McCready v. Nicholson*, 465 F.3d 1, 15 (D.C. Cir. 2006) (formatting modified); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that a discretionary decision made by a district court "without any justifying reason . . . is not an exercise of discretion" but "merely abuse of that discretion"). In particular, "[w]ith no evidence from the Government" negating a requester's identified need, and "no stated basis [by the court] for denying discovery on this front, we must remand for further proceedings so that the District Court may either grant a 'reasonable opportunity to complete discovery,' or explain why discovery is not warranted on other grounds." *McCready*, 465 F.3d at 15 (citation omitted) (quoting *Khan v. Parsons Glob. Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005)). The absence of explanation for the district court's decision not to allow any discovery or evidentiary hearing on the distinct question of innocence calls for vacatur and remand here.

Our colleague maintains that *Rigsbee* established a "uniquely deferential" standard of review for certificate-of-innocence proceedings that requires affirmance here. Dissent 10. But, in *Diamen*, we read *Rigsbee* to require review under the familiar abuse-of-discretion standard, not a distinct standard judicially minted for section 2513 claims. *See Diamen*, 604 F.3d at 655 (citing *Rigsbee*, 204 F.2d at 72). And we noted that other circuits had done the same. *See id.* (citing *Betts*, 10 F.3d 1278); *see also Grubbs*, 773 F.3d at 731 (citing *Diamen*, 604 F.3d at 655-56). We read *Rigsbee* in that way notwithstanding its wording that an order denying a certificate of innocence should stand unless "completely capricious and without rational basis." *Rigsbee*, 204 F.2d at 72. The dissent's accusation that we are disregarding our precedent, *see* Dissent 1, is even further off base given that there was no dispute in *Rigsbee* regarding fact development; our review was limited to the merits of the district court's denial of the innocence claim, *see Rigsbee*, 204 F.2d at 72-73—an issue we do not reach here.

We review a district court's procedural rulings relating to a certificate of innocence just as we review them in other contexts. Congress's decision not to specify procedural requirements in section 2513 does not mean that none apply, nor that a district court's failure to explain its denial of requested procedures is less problematic than it otherwise would be. *See* Dissent 8. We therefore vacate the district court's denial of the certificate of innocence and remand for further proceedings.

### 3. Gaskins' Request for Reassignment

Finally, Gaskins asks that we assign the case to a different judge on remand. The same district judge presided over Gaskins' criminal trial and his motion for a certificate of innocence, as appears to be the norm in these cases. Gaskins

raises two objections on this score. First, he identifies a "structural concern" with "ask[ing] a judge to determine if evidence he or she already found to be proof beyond a reasonable doubt of guilt could, at the same time, be proof by the preponderance of the evidence of innocence." Appellant's Br. 24-25. Second, Gaskins contends that this case presents "ample evidence" that the trial judge did not approach his motion for a certificate of innocence with an open mind. *Id.* at 25. Specifically, Gaskins cites statements from the district court's memorandum order that he says "could be read as sarcastic or derogatory," such as the court's description of Gaskins' story as "remarkable" and its assertion that "Gaskins is not collateral damage in a conspiracy he was tricked into participating in—he is a co-conspirator himself." *Id.* at 29 (citations omitted).

The government opposes Gaskins' request for reassignment, noting that Gaskins cites no case in which an appellate court ordered, or even considered, reassignment in the context of a remand for further consideration of a section 2513 motion. *See* Appellee's Br. 53. The government argues that our precedent has "made clear that § 2513 requires the trial judge to provide his opinion regarding the factors of subsection (a)(2)," *id.* at 55, and quotes *Rigsbee*'s statement that the decision whether to grant a certificate "is committed to the discretion of the presiding [trial] judge," *id.* at 53 (alteration in original) (quoting *Rigsbee*, 204 F.3d at 72).

To the extent that the government argues that the judge who presided over the trial of the person seeking a certificate is the only judge authorized to issue the certificate, it overshoots the mark. To be sure, efficiencies may be gained from assigning decision on a motion for a certificate of innocence to a judge already familiar with the trial record. But section 2513 requires only "a certificate of the *court* . . .

wherein such facts are alleged to appear," 28 U.S.C. § 2513(b) (emphasis added).  The statute does not require assignment to the same judge who presided over the trial.

At the same time, the "structural concern" that Gaskins raises does not render assignment to the same judge categorically inappropriate in the context of section 2513.  District judges are routinely entrusted to follow directions on remand from appellate courts, and they well understand and embrace their obligation to do so.  Reassignments are reserved for "unusual circumstances," such as where it appears the judge would have "substantial difficulty in putting out of his or her mind the previously-expressed views or findings."  *United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997) (internal quotation marks omitted).

Evidence of bias in a particular case could, of course, necessitate remand to a different judge.  But this is not such a case.  Some of the statements cited by Gaskins might have struck him as dismissive, but they do not exhibit bias or a lack of an open mind as would meet our high standard for reassignment.  *See id.*  Thus, we decline to remand Gaskins' motion to another judge.

\* \* \*

For the foregoing reasons, we vacate the district court's denial of Gaskins' motion for a certificate of innocence and remand for further proceedings.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, dissenting: "The tendency to disregard precedents . . . has become so strong . . . as, in my view, to shake confidence in the consistency of decision and leave the courts below on an uncharted sea of doubt and difficulty without any confidence that what was said yesterday will hold good tomorrow." *Mahnich v. S. S.S. Co.*, 321 U.S. 96, 113 (1944) (Roberts, J., dissenting).

Almost 70 years ago, we addressed a certificate of innocence appeal pursuant to 28 U.S.C. § 2513 and concluded that "we cannot require [the presiding district judge] to stultify himself by certifying an opinion contrary to his real conviction—no matter what our own view might be—except, perhaps, in a case in which the refusal to certify innocence was completely capricious and without rational basis." *Rigsbee v. United States*, 204 F.2d 70, 72 (D.C. Cir. 1953). We have addressed § 2513 only one other time, *see Diamen v. United States*, 604 F.3d 653 (D.C. Cir. 2010), and *Diamen* did not purport to abrogate *Rigsbee*'s highly deferential standard of review. Today, the majority nonetheless finds the presiding district judge abused his discretion when he did not explicitly rule on Alvin Gaskins' "motion for a scheduling conference, at which the Court would open limited discovery and to [sic] set a date for an evidentiary hearing." Joint Appendix (J.A.) 86 (capitalization removed). Because I find the majority's position inconsistent with our well-settled precedent, I respectfully dissent.

## I.

As the majority notes, *see* Maj. Op. 4, a petitioner must allege and prove three requisite facts to satisfy § 2513: (1) as relevant here "[h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted," 28 U.S.C. § 2513(a)(1); (2) either "[h]e did not commit any of the acts charged" or "his acts, deeds, or

omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia," *id.* § 2513(a)(2); *and* (3) "he did not by misconduct or neglect cause or bring about his own prosecution," *id.*

"In 2004, a grand jury returned a 100-count indictment charging 21 defendants, including Gaskins, with being members of a conspiracy to distribute narcotics that operated between 1999 and September 2004, and that spanned Virginia, the District of Columbia, and Maryland." *United States v. Gaskins*, 690 F.3d 569, 572 (D.C. Cir. 2012). Gaskins was charged with: "(1) conspiring to distribute and possess with intent to distribute heroin, cocaine, cocaine base, and PCP, in violation of 21 U.S.C. § 846 (the 'narcotics conspiracy'); (2) conspiring to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. § 1962(d) (the 'RICO conspiracy'); and (3) four counts of using a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) (the 'telephone counts')." *Id.* (footnote omitted). On December 5, 2006, a jury found Gaskins guilty on the narcotics conspiracy count, namely, conspiring to distribute and possess with intent to distribute heroin. The jury acquitted Gaskins on the RICO conspiracy and the telephone counts.

Gaskins timely appealed and, on April 30, 2012, we reversed Gaskins' conviction and remanded the case for entry of a judgment of acquittal. On August 14, 2012, our opinion on Gaskins' direct appeal issued, finding that "no reasonable juror" could have found "beyond a reasonable doubt, that [Gaskins] knowingly entered into the conspiracy with the specific intent to further the unlawful objective of drug distribution." *Id.* At the time of Gaskins' 2012 release from incarceration, "[h]e had served nearly eight years of a twenty-

two year sentence." *United States v. Gaskins*, No. 04-cr-379, 2019 WL 7758898, at \*1 (D.D.C. Dec. 13, 2019).

On June 29, 2017, five years after his release, Gaskins moved for a certificate of innocence (COI) in district court pursuant to 28 U.S.C. § 2513. Gaskins' memorandum in support argued:

> [T]he preponderance of the evidence demonstrate[d] that (1) [his] conviction was overturned for the reason that he was not guilty of the crimes charged, (2) none of his actions constituted offenses against the United States, as he did not knowingly enter into the conspiracy nor intentionally further its aims, and (3) he did not bring about his own prosecution through misconduct or neglect.

J.A. 7. For those reasons, Gaskins argued he was entitled to a COI pursuant to § 2513(a). Notably, Gaskins requested neither an evidentiary hearing nor discovery in his COI motion.

On October 5, 2017, after the district court granted its request for an extension of time, the government filed its opposition to Gaskins' COI motion. The government argued "[t]he direct and circumstantial evidence presented at trial indicate strongly that [Gaskins] indeed knowingly participated in this narcotics conspiracy" and therefore Gaskins "has not and cannot meet his burden of showing by a preponderance of the evidence that he is either actually innocent or that he did not bring about his own prosecution through his misconduct or neglect." J.A. 27.

One day before it was due, Gaskins filed a consent motion for an extension of time to file his reply from October 12, 2017 to November 12, 2017. On December 29, 2017, the district

court granted Gaskins' motion and ordered Gaskins to submit his reply by November 12, 2017, *nunc pro tunc*. As of December 29, 2017, Gaskins still had not lodged his reply, despite requesting the extension only to November 12, 2017. On January 23, 2018, Gaskins filed a consent motion to file an untimely reply and attached his untimely reply to the consent motion. The district court never ruled on Gaskins' consent motion to file an untimely reply.

In his untimely reply, Gaskins asserted, for the first time, that he "will be submitting a motion requesting a hearing so he may plead his case, and also requesting limited discovery." J.A. 52. Despite stating he "intend[ed] to submit this motion soon," Gaskins did not file a motion until November 19, 2018, nearly ten months later. J.A. 52 n.1. Gaskins' November 2018 motion was titled: "motion for a scheduling conference, at which the court would open limited discovery and to [sic] set a date for an evidentiary hearing." J.A. 86 (capitalization removed). In his motion for a scheduling conference, Gaskins asserted "that he has met his burden for the reasons stated in his motion for a certificate" but "if the court does not find this sufficient, . . . Gaskins requires an evidentiary hearing where [he] could testify, subject to cross examination, of the circumstances leading up to his arrest." J.A. 86.

On December 13, 2019, the district court denied Gaskins' motion for a COI. The district court concluded that Gaskins failed to establish by a preponderance of the evidence that he met § 2513(a)'s second requirement—that he did not in fact commit the acts charged. *Gaskins*, 2019 WL 7758898, at *2. Specifically, it found "Gaskins' emphasis on evidentiary gaps d[id] not negate the inferences that may be drawn from the evidence against him." *Id.* at *3. In this respect, the district court concluded:

> Gaskins supported the conspiracy for years. He arranged flights for co-conspirators when they would travel to negotiate drug deals. He purchased cell phones under his own name and address, but quickly relinquished them to co-conspirators who would use them to coordinate the conspiracy's next steps. He leased an apartment under his own name, but likewise turned the keys over to co-conspirators who used the apartment as a "stash house."

*Id.* The district court rejected Gaskins' innocent explanation of the flights, phones and apartment, namely, that Gaskins believed he was doing work for a legitimate business, Dream Team Investigations (DTI). The district court found: "DTI was a front for the drug ring, and hardly pretended to be an honest enterprise (let alone one thriving enough to justify cross-country flights and an extra apartment). Most likely, someone closely involved in DTI's operations would have known this." *Id.* Although the district court acknowledged that Gaskins' theory of innocence was "*possible*," "possible will not win him the day." *Id.* at *4. The district court concluded that "the more likely explanation [is] that Gaskins knew of the conspiracy and participated in it anyways." *Id.*

The district court also found that Gaskins failed to meet § 2513(a)'s third requirement because Gaskins caused or brought about his own prosecution by neglect.

> In the unlikely event that Gaskins is actually innocent, he still fails the final clause of the statute. Each red flag the Court identifie[d] above should have been readily apparent to Gaskins over the years of his employment—this is not a situation where hindsight provides extra

clarity. Under the statute, negligence trumps innocence, and even under his own theory Gaskins demonstrated extreme negligence by failing to detect what was right under his nose. He provided direct logistical support for the conspiracy, and either knew about it or should have known.

*Id.*

## II.

### A.

Gaskins and the government agree that the abuse of discretion standard applies to the district court's implicit denial of Gaskins' motion for a scheduling conference. *See* Maj. Op. 20. The majority nonetheless vacates the district court's denial of Gaskins' COI motion and remands the case because of the "absence of explanation for the district court's decision not to allow any discovery or evidentiary hearing on the distinct question of innocence." *Id.* at 24. I disagree because, in my opinion, the district court's denial was neither "completely capricious" nor "without rational basis." *Rigsbee*, 204 F.2d at 72.

It is of no moment that the district court did not explicitly deny Gaskins' motion for a scheduling conference. We have previously affirmed a district court's implicit denial of a party's procedural motion. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 580 (D.C. Cir. 2010) ("We think it is plain that the [d]istrict [c]ourt meant to deny appellant's [procedural] motions when it granted appellees' motions for summary judgment and dismissed the case. The [d]istrict [c]ourt did not abuse its discretion in [implicitly] denying appellant's motions."). *Gaujacq* involved, *inter alia*, a motion to compel discovery and

we emphasized that we are "'especially reluctant to interfere with district court decisions regarding their own day-to-day operations,' particularly the [d]istrict [c]ourt's 'broad discretion in structuring discovery.'" *Id.* (quoting *Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006)). The same conclusion follows here. It is plain that the district court by necessary implication intended to deny Gaskins' motion for a scheduling conference when it denied his COI motion.

Moreover, "we do not find an abuse of discretion based on whether we, if standing in the [d]istrict [c]ourt's shoes, would have granted the motion." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020).[1] Simply put, the abuse of discretion standard is "a rule of appellate restraint, a principle faithful to the reality that appellate tribunals cannot hope to have the entire range of considerations as readily at hand as the court charged with the case in the first instance." *Founding Church of Scientology of Wash., D.C., Inc. v. Webster*, 802 F.2d 1448, 1457 (D.C. Cir. 1986). Our precedent demands even greater deference in the § 2513 context than in the run-of-the-mill abuse of discretion case. *See Rigsbee*, 204 F.2d at 72 (district court's COI decision can be disturbed only "in a case in which the refusal to certify innocence was completely capricious and without rational basis.").[2] I believe the majority fundamentally misapplies the

---

[1] *See also United States v. Mathis-Gardner*, 783 F.3d 1286, 1288 (D.C. Cir. 2015) ("Our review for abuse of discretion does not permit us to substitute our judgment for that of the trial court, so we cannot decide the issue by determining whether we would have reached the same conclusion." (internal quotations and citation omitted)); *Gomez v. Chody*, 867 F.2d 395, 405 (7th Cir. 1989) ("To find an abuse of discretion, we must conclude that no reasonable man could agree with the district court.") (quoting *Mumford v. Bowen*, 814 F.2d 328, 329 (7th Cir. 1986)).

[2] The Fourth and Eighth Circuits have since adopted *Rigsbee*'s highly deferential standard of review. *See United States v. Graham*,

*Rigsbee* standard—the district court did not abuse its discretion in denying by necessary implication Gaskins' motion for a scheduling conference.

Granted, we have stated that "[w]hen we review a district court's decision for an abuse of discretion, it is imperative that a district court articulate its reasons." Maj. Op. 24 (quoting *McCready v. Nicholson*, 465 F.3d 1, 15 (D.C. Cir. 2006) (formatting modified)). As noted, however, we have also affirmed a district court's implicit denial of a discovery motion. *See Gaujacq*, 601 F.3d at 580. Accordingly, I believe our precedent is uncertain on this general issue. Especially in the COI context, I believe it inappropriate to conclude the district court abused its discretion in implicitly denying Gaskins' motion for a scheduling conference because "[t]he certificate-of-innocence statutes do not establish specific procedures for deciding a petition." *Abu-Shawish v. United States*, 898 F.3d 726, 737 (7th Cir. 2018); *see also United States v. Grubbs*, 773 F.3d 726, 732 (6th Cir. 2014) ("statute is entirely silent as to what procedure a court should follow in determining whether

---

608 F.3d 164, 172 (4th Cir. 2010) ("When a district judge has exercised his substantial discretion to deny a certificate of innocence, 'we cannot require him to stultify himself by certifying an opinion contrary to his real conviction—no matter what our own view might be—except, perhaps, in a case in which the refusal to certify innocence was completely capricious and without rational basis.'" (quoting *Rigsbee*, 204 F.2d at 72)); *United States v. Racing Servs., Inc.*, 580 F.3d 710, 713 (8th Cir. 2009) ("[O]ur review for abuse of discretion is especially deferential. As the D.C. Circuit explained . . . : 'Where, as here, [the trial judge] has exercised that discretion, we cannot require him to stultify himself by certifying an opinion contrary to his real conviction—no matter what our own view might be—except, perhaps, in a case in which the refusal to certify innocence was completely capricious and without rational basis.'" (quoting *Rigsbee*, 204 F.2d at 72) (alteration in original)).

or not a petitioner is entitled to a certificate" (internal quotations omitted)). Indeed, the Eighth Circuit has found that a district court's denial of a request for an evidentiary hearing was not an abuse of discretion. *See Holmes v. United States*, 898 F.3d 785, 790–91 (8th Cir. 2018) ("district court did not abuse its discretion when it chose to rely on the trial record and other relevant facts presented by affidavits rather than conducting an evidentiary hearing").

Although the majority finds a pair of Seventh Circuit decisions instructive, *see* Maj. Op. 20–21, those decisions do not bear on the issue presented here. First, in *Abu-Shawish*, the Seventh Circuit vacated and remanded after the district court denied a petitioner's *pro se* COI petition without requiring a government response or affording the petitioner an opportunity to replead. *See Abu-Shawish*, 898 F.3d at 737–38. In contrast, Gaskins, by counsel, filed a COI motion, the district court ordered the government to respond to Gaskins' COI motion and Gaskins was provided the opportunity to reply—including tardily—to the government's opposition. Second, in *Pulungan v. United States*, the Seventh Circuit reversed and remanded a district court's issuance of a COI because the "district court treated [the earlier appellate] decision that [Pulungan] is entitled to an acquittal as equivalent to a decision that he did not commit a crime." 722 F.3d 983, 985 (7th Cir. 2013).[3] Here, we all agree that "the prior appellate decision [that overturned Gaskins' conviction] does not by itself amount to a finding of innocence." Maj. Op. 17. The majority, however, believes *Pulungan* supports the need for an evidentiary hearing in certain COI cases. *See id.* at 21. I find unconvincing the

---

[3] In the earlier appellate decision, the Seventh Circuit "held that it had not been *proved*, beyond a reasonable doubt, that Pulungan committed the crime. . . . A conclusion that the prosecutor did not prove a charge beyond a reasonable doubt differs from a conclusion that the defendant is innocent in fact." *Id.*

majority's reliance on out-of-circuit dicta regarding the need, if any, for an evidentiary hearing—especially given the highly deferential abuse of discretion standard applicable to our review here. *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 351 n.12 (2005) ("Dictum settles nothing, even in the court that utters it.").

Although Gaskins did not testify during the three-month trial—as is his absolute right guaranteed by the Fifth Amendment to the U.S. Constitution—the burden of proof has now switched to him in this proceeding. His reliance on others' affidavits only highlights his failure to tell his own story. The district judge should not be required to indulge Gaskins' preference for a step-by-step discovery process regarding his testimony when he was perfectly able to supply affidavits from others.[4]

In sum, because it is pellucid that the district court intended to deny Gaskins' motion for a scheduling conference, that the district court is afforded broad discretion on discovery issues and that § 2513 does not set forth any procedural requirements for COI proceedings, I believe we are constrained to affirm the district court's implicit denial under *Rigsbee*'s uniquely deferential standard of review.[5]

---

[4] Indeed, Gaskins himself believed he "ha[d] met his burden" by submitting his motion for a COI with its attachments, J.A. 86, manifesting—at least to me—an inexplicable reluctance to "proclaim" his innocence on the record.

[5] The majority asserts that "in *Diamen*, we read *Rigsbee* to require review under the familiar abuse-of-discretion standard, not a distinct standard judicially minted for section 2513 claims." Maj. Op. 25. Again respectfully, the majority misreads *Diamen*. *Diamen* applied *de novo* review to the "purely legal issue" decided in that case. *Diamen*, 604 F.3d at 655. Accordingly, assuming *arguendo* the

**B.**

The district court also determined that Gaskins failed to satisfy § 2513(a)'s third requirement—"he did not by misconduct or neglect cause or bring about his own prosecution." 28 U.S.C. § 2513(a)(2); *see Gaskins*, 2019 WL 7758898, at *4. The majority concludes it need not reach the third requirement. *See* Maj. Op. 19. I disagree.

Much of the majority's reasoning in support of its procedural remand focuses on the *potential* importance of Gaskins' *potential* future testimony regarding his knowledge of the narcotics conspiracy.[6] The district court, however, also found that "*even under his own theory* Gaskins demonstrated extreme negligence by failing to detect what was right under his nose. He provided direct logistical support for the conspiracy, and either knew about it or *should have known*." *Gaskins*, 2019 WL 7758898, at *4 (emphases added). The district court thus provided an independent basis for denying Gaskins' COI motion, which judgment was neither "completely capricious" nor "without rational basis." *Rigsbee*, 204 F.2d at 72.

---

majority's reading of *Diamen* is correct, *Diamen*'s fleeting description of the *Rigsbee* standard of review is dicta and does not dilute *Rigsbee*.

[6] *See, e.g.*, Maj. Op. at 2–3 ("The key issue bearing on whether Gaskins is entitled to the certificate concerns his state of mind, that is, whether he agreed to work with co-conspirators with the specific intent to distribute drugs. . . . In the circumstances, the district court's *sub silentio* denial of Gaskins' unopposed request for an opportunity to augment the record was error."); *id.* at 24 ("Gaskins' requests aimed at developing the key factual issue of his own state of mind.").

Although we have not previously addressed § 2513(a)(2)'s "misconduct or neglect" requirement, I believe the Fourth Circuit's decision in *United States v. Graham*, 608 F.3d 164 (4th Cir. 2010), provides the proper approach as opposed to the Seventh Circuit's decision in *Betts v. United States*, 10 F.3d 1278 (7th Cir. 1993).[7] In *Betts*, the Seventh Circuit held that "before the petitioner can be said to have caused or brought about his prosecution within the meaning of section 2513(a)(2), he must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense." 10 F.3d at 1285. In *Graham*, the Fourth Circuit rejected the Seventh Circuit's "narrow reading of subsection (a)(2) because it effectively reads 'neglect' out of the statute." 608 F.3d at 174. Instead, the Fourth Circuit found "the statute's 'misconduct or neglect' language on its face captures noncriminal conduct"; accordingly it requires "'courts to assess the virtue of a petitioner's behavior even when it does not amount to a criminal offense.'" *Id.* (quoting *Betts*, 10 F.3d at 1285).

I would reject the Seventh Circuit's interpretation of the "misconduct or neglect" requirement and adopt the Fourth Circuit's for the reasons provided in *Graham*.[8] Specifically, we "must strive to interpret a statute to give meaning to every clause and word." *Donnelly v. FAA*, 411 F.3d 267, 271 (D.C. Cir. 2005). Every example noted in *Betts*, however, constitutes "misconduct" rather than "neglect." *See Betts*, 10 F.3d at 1285

---

[7] As the majority notes, *see* Maj. Op. 19, the Sixth Circuit endorsed the Seventh Circuit's *Betts* approach in *United States v. Grubbs*, 773 F.3d 726, 732 n.4 (6th Cir. 2014). The Sixth Circuit, however, provided no explanation for its endorsement of the *Betts* approach. *See id.* No other circuit has addressed § 2513(a)(2)'s "misconduct or neglect" requirement in a published opinion.

[8] At oral argument, the government conceded that its argument would fail under the *Betts* approach but would prevail under the *Graham* approach. *See* Oral Arg. Tr. 33:15–34:10.

("The clearest example would be the defendant who either falsely confesses to a crime or intentionally withholds exculpatory evidence—in common parlance, one who 'takes the fall' for someone else."); *see also id.* (quoting "[e]xamples of the *misconduct* referred to" in *United States v. Keegan*, 71 F. Supp. 623, 638 (S.D.N.Y. 1947) (emphasis added)). To avoid reading "neglect" out of the statute, a court must consider whether the petitioner's neglectful conduct—criminal or noncriminal—caused or brought about his prosecution.

Applying this interpretation of § 2513(a)(2)'s "misconduct or neglect" requirement, I believe the district court's determination that Gaskins "should have known" that he "provided direct logistical support for the conspiracy," *Gaskins*, 2019 WL 7758898, at *4, was neither "completely capricious" nor "without rational basis," *Rigsbee*, 204 F.2d at 72. The district court found the government's circumstantial evidence—the apartment lease agreement in Gaskins' name that was used as the narcotics conspiracy's "stash house," the wiretap evidence and airline records showing that Gaskins arranged flights for a conspirator working as a cash courier, Gaskins' subscription to a cell phone that a conspirator used to conduct drug business and significant questions about whether DTI conducted legitimate business—demonstrated Gaskins' "extreme negligence" and that his neglectful conduct led to his prosecution. *Gaskins*, 2019 WL 7758898, at *4. "[R]eview for abuse of discretion does not permit us to substitute our judgment for that of the trial court" if there are two permissible inferences from the evidence. *See Mathis-Gardner*, 783 F.3d at 1288 (internal quotations omitted); *cf. Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or

documentary evidence or inferences from other facts." (citations omitted)). Accordingly, applying *Rigsbee*'s discrete abuse of discretion standard of review, I believe *stare decisis* requires that we affirm the district court's denial of Gaskins' COI motion.

Because I believe the majority opinion contravenes our standard of review, I respectfully dissent. On remand, whether the district court ultimately grants or denies Gaskins' motion for a scheduling conference, its conclusion will likely remain the same—Gaskins "should have known" that he "provided direct logistical support for the conspiracy." *Gaskins*, 2019 WL 7758898, at *4.